## PEOPLE *v.* SZYMANSKI.

1. CRIMINAL LAW—INDECENT LIBERTIES—PURPOSE OF STATUTE.

   Statute penalizing male person who takes indecent liberties with the person of a female child under the age of 16 years penalizes conduct of such character as the common sense of society regards as indecent and improper (Act No. 328, § 336, Pub. Acts 1931).

2. SAME—INDECENT LIBERTIES—EVIDENCE.

   Detailed testimony of 9-year-old complaining witness as to offense against her person *held*, of such character as fully to justify conclusion of trial judge, sitting without a jury, that the offense of taking indecent liberties, as charged, had been committed, hence claim that the *corpus delicti* was not sufficiently established was without merit (Act No. 328, § 336, Pub. Acts 1931).

3. SAME—INDECENT LIBERTIES—CONFLICTING TESTIMONY—CREDIBILITY OF WITNESSES—NONJURY CASE.

   In prosecution of 26-year-old man for taking indecent liberties with a 9-year-old girl, it was the duty of the trial judge, sitting without a jury, to determine the credibility of the witnesses where the testimony was in conflict as to identity of defendant (Act No. 328, § 336, Pub. Acts 1931).

4. SAME—NONJURY CASE—SUFFICIENCY OF EVIDENCE.

   Where evidence in nonjury criminal case is sufficient to support trial judge's finding defendant guilty beyond a reasonable doubt, the Supreme Court may not set aside the verdict on the ground the evidence was insufficient to sustain it.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 33 Am. Jur., Lewdness, Indecency and Obscenity, § 4.
[2] 20 Am. Jur., Evidence, §§ 1216, 1231.
[2] Necessity and sufficiency of corroboration of prosecutrix in prosecution for rape.  60 A.L.R. 1124.
[2, 3] 58 Am. Jur., Witnesses, §§ 129–136.
[3] 20 Am. Jur., Evidence, § 1222; 58 Am. Jur., Witnesses, §§ 860–862, 865, 869.
[4] 3 Am. Jur., Appeal and Error, § 883.
[5] 20 Am. Jur., Evidence, §§ 222, 1256.

5. SAME—PRESUMPTION OF INNOCENCE—FAIR TRIAL.
   Claim that benefit of presumption of innocence had not been
   accorded defendant, charged with taking indecent liberties
   with the person of a female child under 16 years of age, and
   that he did not have a fair trial *held*, without merit (Act No.
   328, § 336, Pub. Acts 1931).

Appeal from Recorder's Court for the City of Detroit; Gillis (Joseph A.), J.  Submitted April 15, 1948.  (Docket No. 71, Calendar No. 43,470.)  Decided May 18, 1948.  Rehearing denied June 29, 1948.

Anthony Szymanski was convicted of taking indecent liberties with a female child.  Affirmed.

*William Cohen* and *George W. Miller*, for appellant.

*Eugene F. Black*, Attorney General, *Edmund E. Shepherd*, Solicitor General, *James N. McNally*, Prosecuting Attorney, *Robert Newton Smiley* and *Mark Friedman*, Assistant Prosecuting Attorneys, for the people.

CARR, J.  Defendant was convicted in the recorder's court for the city of Detroit of the crime of taking indecent liberties with the person of a 9-year-old girl, without committing or intending to commit the crime of rape, in violation of Act No. 328, § 336, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–336, Stat. Ann. § 28.568).  The information filed in the case alleged that the offense was committed on the 26th day of May, 1945, in the city of Detroit. It was the claim of the prosecution on the trial that the conduct charged against defendant occurred in a certain theater on the afternoon of the date alleged. Defendant's testimony discloses that he was 26 years of age at that time.  Trial by jury was waived and

the case was heard before the court. Defendant has appealed from the verdict and sentence.

It is claimed on behalf of defendant that the evidence in the case was insufficient to establish with the requisite degree of certainty that the offense charged was actually committed. The statute cited provides:

"Any male person or persons over the age of sixteen years, who shall assault a female child under the age of sixteen years, and shall take indecent and improper liberties with the person of such child, without committing or intending to commit the crime of rape upon such child, shall be guilty of a felony."

The child against whom the offense is claimed to have been committed, herein referred to as the complaining witness, testified that she entered the theater in company with a younger sister and another girl 10 years of age. The children sat together and the youngest fell asleep. A man, claimed by the people to have been defendant, sat down beside the complaining witness. In describing the alleged offensive conduct, she further testified:

"As soon as he moved in and sat down, he put his hand up my dress. I think I told Adrien to move over, so she did; then I moved over a seat and he moved over a seat, too. He put his hand on the bare skin of my leg, but he didn't move his hand very high, though, up my dress or whatever it was I was wearing. I didn't tell Adrien why I wanted her to move over until after I got out of the show because I was scared. I was so scared I didn't know what to do. He did it until the show was over, I guess, and then I went out with Adrien in a hurry and I told her; then I went home and told my mother, and my mother came back with Adrien."

It is argued by defendant's counsel that the conduct described in the testimony quoted was not sufficient to constitute the offense defined by the statute.

Reliance is placed on language found in the opinion of this Court in *People* v. *Hicks,* 98 Mich. 86. There the defendant was charged with the crime of taking indecent liberties with the person of a female child, and the child against whom the offense was claimed to have been committed gave testimony similar in character to that of the complaining witness in the instant case. However, in the *Hicks Case,* the child's mother was permitted to detail a conversation in which the child made statements indicating that defendant had taken more objectionable liberties with her person than her testimony on the trial suggested. In holding that such testimony by the mother was incompetent and prejudicial, the Court expressed doubt if, without such testimony, the jury would have convicted of any greater offense than assault and battery. It is significant to note that the Court did not state that a verdict of guilty of the more serious offense charged could not have been sustained on the basis of the testimony of the occurrence as given by the girl. It is significant to note also that in the case cited defendant was apparently well acquainted with the girl and with her parents. The case was reversed, not because of the insufficiency of competent evidence to establish the offense, but because of error in the admission of the testimony in question and also error in the charge of the court.

In the case at bar, the circumstances surrounding the offense charged against the defendant were materially different from those involved in *People* v. *Hicks, supra.* Here the parties concerned were not acquainted, and there is nothing in the record to indicate that the complaining witness had ever previously seen the man who sat beside her in the theater. The testimony is undisputed that he placed his hand on her bare leg under her dress, and that he kept it there for some time. The circumstances

under which the act was done indicate the motivating purpose and intent. Clearly, the occurrence was not accidental. The fright of the complaining witness at the time and her subsequent complaints to her companion and to her mother are significant. The statute penalizes conduct that is of such character that the common sense of society regards it as indecent and improper. *People* v. *Healy,* 265 Mich. 317; *People* v. *Visel,* 275 Mich. 77. The offense against the person of the complaining witness, as detailed in her testimony, was of such character as fully to justify the conclusion of the trial judge that the offense charged in the information had been committed. The claim that the *corpus delicti* was not sufficiently established is without merit. *People* v. *Lakin,* 286 Mich. 282.

It is also claimed that the proofs as to the identity of defendant were not of such character as to justify his conviction. Emphasis is placed on testimony of the complaining witness, who gave somewhat inconsistent answers to questions propounded to her and indicated uncertainty as to her identification of defendant. However, the testimony of the girl Adrien, given in a normally childish manner, indicated that she was positive that defendant was the man sitting beside the complaining witness in the theater. In answer to the question, "What makes you think you are positive he is the man?", she replied, "He looks just like that man." The following testimony, given on cross-examination by defendant's counsel, is also significant:

"*Q.* Now, when you went up to the police station and you saw these men standing up and you were asked a question about this man, you said this was not the man, is that right?

"*A.* I said that was the man.

"*Q.* You said that was the man? When did you say that?

"*A*. When he was in that dark room, when they had him turn around. Not when he was facing me but when he turned around and I saw the side of his face, I knew it was him.

"*Q*. You just saw the side of his face, but when you saw him full, the way he is standing now, you told the policemen that is not the man?

"*A*. I said it was the man, but I wasn't sure until he said—he had him turned.

"*Q*. When he turned around and you saw his hunch-back, is that right? You knew that he was hunch-backed; that is why you said that is the man?

"*A*. No, it wasn't why. I said it because I only seen the side of the man's face and I could tell the side of the face even better than I could tell him from his front view."

Defendant testified in his own behalf and denied that he was at the theater in question on the afternoon of May 26, 1945. He did, however, admit attending said theater on other occasions, although it was located several miles from his home. He was arrested in the theater on June 16th following the date of the alleged offense. He claimed that at the time the offense was alleged to have been committed he was visiting at the home of friends, Mr. and Mrs. Mrozek. The latter testified in his behalf in support of his claim of an alibi. She stated that defendant came to her home between 3 and 4 o'clock in the afternoon on the 26th of May and that he stayed until about 7:30. Mr. Mrozek was not called as a witness, although defendant testified that he was at home on the occasion of defendant's visit.

The testimony of defendant and his witness is at variance with that of the people's witness, the girl Adrien. As the trier of the facts it became the duty of the trial judge to determine the credibility of the witnesses and decide the disputed issue. It is apparent that he believed the testimony of the people's

witnesses. We cannot say that he erred in doing so. In *People* v. *Blanchard,* 136 Mich. 146, it was held that this Court will not, on appeal in a criminal case, weigh conflicting evidence. The trial judge saw and heard the witnesses and he was in a far better position than is this Court to determine their credibility. There was evidence to support the finding that defendant was guilty beyond a reasonable doubt. Such being the case, this Court may not set aside the verdict on the ground that the evidence was not sufficient to sustain it. *People* v. *Eger,* 299 Mich. 49; *People* v. *Chesbro,* 300 Mich. 720.

It is further claimed that the trial court did not accord defendant the benefit of the presumption of innocence throughout the trial. We have examined the record and conclude that the claim is wholly without merit. Defendant was ably represented by counsel, and there is no basis for any claim that he did not have a fair trial. The verdict and sentence are affirmed.

BUSHNELL, C. J., and SHARPE, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.