PEOPLE *v.* NUGENT

1. CRIMINAL LAW—IDENTIFICATION IN COURT—ILLEGAL LINEUP.
    Whether an in-court identification of defendant can be said to be based on observations independent of an illegal lineup depends upon various factors, including prior opportunity to observe the criminal act, the existence of any discrepancy between any pre-lineup description and defendant's actual appearance, any identification of another person before the lineup, pre-lineup identification of defendant from a picture, failure to identify defendant on a prior occasion and a time lapse between the criminal act and the lineup identification.

2. WITNESSES—RAPE—ILLEGAL LINEUP—IN-COURT IDENTIFICATION—INDEPENDENT SOURCES.
    Rape complainant's statements that she had seen her assailant at two different times, that she had observed his physical appearance and attire, that her lineup identification of defendant was based not only on his attire but also on her recollection of his facial features, that she had never failed to identify defendant as her attacker nor had she ever identified anyone else as her assailant, plus the fact that her accurate pre-lineup description of defendant remained unchanged throughout the proceedings, were sufficient, if believed by the court, to establish that complainant's in-court identification of defendant was not based on any impressions she may have obtained from an illegal lineup (MCLA § 750.520).

3. WITNESSES—APPEAL AND ERROR—CRIMINAL LAW—IDENTIFICATION—WITNESSES—REVIEW—CREDIBILITY.
    Whether an in-court identification of a defendant is based upon sources independent of an illegal lineup depends upon the

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 21 Am Jur 2d, Criminal Law §§ 361, 368.
    53 Am Jur, Trial § 39.
[2] 44 Am Jur, Rape § 74.
    21 Am Jur 2d, Criminal Law §§ 361, 368.

credibility of the identifying witness and the Court of Appeals will not substitute its judgment on the credibility of that identifying witness for that of the trier of fact.

Appeal from Genesee, Stewart A. Newblatt, J. Submitted Division 2 November 4, 1969, at Lansing. (Docket No. 6,036.)   Decided December 10, 1969.

Richard Elwood Nugent was convicted of rape. Defendant appeals.   Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney and *Roger W. Kittendorf,* Assistant Prosecuting Attorney, for the people.

*Howard R. Grossman,* for defendant.

Before:   J. H. GILLIS, P. J., and MCGREGOR and V. J. BRENNAN, JJ.

V. J. BRENNAN, J.   Richard Elwood Nugent was convicted by a jury of forcible rape* and sentenced to a prison term of 12–1/2 to 40 years. On appeal the only issue is whether the trial court erred by ruling that the rape victim was able to identify the defendant at the trial independently of her observation of the defendant during a lineup conducted without the benefit of counsel and therefore illegally under *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149) and *Gilbert* v. *California* (1967), 388 US 263 (87 S Ct 1951, 18 L Ed 2d 1178).

---

* MCLA § 750.520 (Stat Ann 1954 Rev § 28.788).

Around noon of August 14, 1967, the complainant was returning with her two-year-old daughter from the swimming pool to her apartment when she was forced into her apartment at knife-point and raped. The complainant twice observed her assailant's features, once as she entered the building and saw him standing in the lobby, and again when he temporarily removed a bedspread he had placed over her head. According to the description she gave to the Genesee county sheriff's department, her assailant was a white man, about five feet, nine inches tall and weighing 150 pounds, with long dark hair, and was wearing a rust-colored shirt, blue jeans, and loafer-style tennis shoes spotted with grease. He carried a chrome and silver-colored knife. In a brief conversation held after intercourse, the man told his victim that he was 26 years old and married. The complainant gave the investigating officers a ball-point pen dropped by her assailant during the scuffle.

On the following day, the sheriff's department arrested a man—the defendant here—substantially meeting the above description, including the clothing, who was carrying a chrome- and silver-colored knife. It was soon learned that the ball-point pen belonged to the defendant, that the defendant was employed on a construction site near the complainant's apartment house, and that a fellow-employee had seen the defendant enter the apartment house around noon of the day in question. Without being advised of his right to the presence of an attorney, the defendant was placed in a lineup with four other men between the ages of 25 and 40. Of the men wearing work clothes, neither was of the same age or physique as the defendant; and of those of the same age and physique, neither was wearing work clothes. The defendant was identified by the

complainant as her assailant, and, after a preliminary examination, was bound over for trial.

Prior to trial, the court suppressed any and all evidence dealing with the lineup identification and barred the complainant from identifying the defendant in the absence of a hearing establishing her ability to do so independently of the lineup. No hearing was requested. A second jury was selected when the trial ended in a hung jury, but this time the prosecution moved that an evidentiary hearing be held. After hearing the testimony of the complainant, the court ruled that the prosecution had met its burden under *Wade* and *Gilbert, supra,* and permitted the complainant to point the defendant out at the second trial.

The claim by the defense that the in-court identification was without a source independent of the lineup is based on two allegations:

1) Any impressions the complainant might have gained of her assailant's face merged with the impressions of the defendant's face gained during the lineup, the preliminary examination, and the two-day trial, and therefore it was impossible for her to discern the former impressions from the latter, her testimony to the contrary notwithstanding; and

2) The complainant identified the defendant at the lineup not by his face, but by his clothing, which was like that worn by her assailant and unlike that worn by an other man in the lineup of the same age and physique.

In support of the second allegation, the defense quotes the following from the transcript of the preliminary examination:

"*Q.* This one man's clothes were quite a bit different then [*sic*] everyone else's clothes?
"*A.* Yes, sir.

"*Q.* The way you recognized him, was it by the clothes?

"*A.* Uh-huh."

In *Wade,* the United States Supreme Court noted that whether an in-court identification can be said to be based on observations independent of the illegal lineup depends on various factors, among them:

"the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification." 388 US 218, 241 (87 S Ct 1926, 1940, 18 L Ed 2d 1149, 1165).

The Court also noted that it is "relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." At the hearing in the present case, the complainant related the two opportunities she had for seeing her assailant's face, repeated the description she had given to the sheriff's department, and told the court that at no time did she either fail to identify the defendant or identify a different person as her assailant. She admitted saying at the preliminary examination that she identified the defendant at the lineup by his clothing, but explained that this means of identification was not to the exclusion of identifying him by his facial features. She had taken special note of the clothing because such dress was unusual for the lobby of her apartment house. She also testified, first on direct examination:

"*Q.* Now do you have a present recollection of the face and general-body build of this man, based upon the observations that you have just testified to? [the observations made in the apartment house]

"*A.* Yes.

"*Q.* On the basis of that present recollection, are you able to identify this man?

"*A.* Yes, I am.

"*Q.* Do you see this man in the courtroom today?

"*A.* Yes, I do."

and on cross-examination:

"*Q.* Would you say by looking at him right now your identification, shall we say, is more positive because of the preliminary examination and the trial?

"*A.* No, not necessarily.

"*Q.* At the lineup what was the basic way that you identified Mr. Nugent?

"*A.* The hair, the build, the clothes that he wore and his facial structure.

"*Q.* Wasn't basically the clothes?

"*A.* Not necessarily.

       *       *       *

"*Q.* No, you couldn't see him clearly, could you? You never did see the man clearly, did you, until the day of the lineup?

"*A.* Yes, I did.

       *       *       *

"*Q.* Without that lineup you wouldn't be positive?

"*A.* I would be positive. If—if I had seen him on the street I could have identified him."

and again on re-direct examination:

"*Q.* Are you positive in your mind that the identification that you have made here in this courtroom

today are [*sic*] made on the basis of the observations you made on August the 14th 1967?

"*A*. Yes, sir."

It seems to us that on the present record the complainant's testimony if believed, sustains the trial court's finding and consequently its ruling. The question whether there was an independent source thus narrows to one of credibility. This Court will not substitute its judgment on the credibility of a witness for that of the trier of fact. *People* v. *Szymanski* (1948), 321 Mich 248; *People* v. *Williams* (1966), 3 Mich App 272. The trial court, sitting as the trier of fact at the hearing, chose to believe the complainant's testimony. Accordingly, we find no error in allowing the complainant to identify the defendant in the presence of the jury.

Affirmed.

All concurred.