PEOPLE *v.* MAJOR
PEOPLE *v.* OKONIEWSKI
PEOPLE *v.* MAGNUSON

1. ARREST—WITHOUT WARRANT—PROBABLE CAUSE—REASONABLE BE-LIEF.

A peace officer may validly arrest a person without a warrant if the facts before the officer at the time of the arrest would warrant a reasonable belief that the person arrested has committed a felony; "reasonable belief" requires that the officer "actually" believe, rather than merely "suspect", that the person arrested has committed the felony for which the arrest is made (MCLA § 764.15[c]).

2. ARREST—WITHOUT WARRANT—PROBABLE CAUSE.

The police had probable cause to arrest the defendants without a warrant where (1) an armed robbery of a bar had been committed by a woman, (2) the police had a description of the woman robber, (3) the police had the license number of an automobile which was outside the bar shortly before it was robbed and had learned the car had been occupied by two women, one a redhead, and a man, (4) the automobile in question was parked outside the residence of one of the defendants, a former employee of the bar, (5) the facts indicated that the robbery was an "inside job", and (6) when the police entered the residence, two women, one a redhead and the other matching the description of the woman robber, were present (MCLA § 764.15[c]).

3. SEARCHES AND SEIZURES—INCIDENT TO ARREST—PLAIN VIEW.

Search without a warrant of one of the defendant's apartment and the seizure of certain items of evidence was proper where

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 5 Am Jur 2d, Arrest § 44 *et seq.*
[3, 4] 29 Am Jur 2d, Evidence § 411 *et seq.*
[5, 6] 29 Am Jur 2d, Evidence §§ 371, 372.

the police made valid arrests of the defendants without warrants, the search was limited to the area within the defendants' immediate control, the search was for weapons, implements, and fruits of the crime for which defendants were arrested, and the items of evidence seized were within the plain view of the officers.

4. Searches and Seizures—Incident to Arrest—Plain View.

The scope of a search of the defendant's apartment was not too broad where the evidence seized was taken incident to a lawful arrest and was in the plain view of the officers.

5. Criminal Law—In-Court Identification—Illegal Lineup—Independent Source.

In-court identification of the defendant was properly admitted even though there had been an illegal lineup identification where the witness, at the hearing to determine whether there was an independent source for the identification, said that she could have identified the defendant without the lineup and the court believed the witness's testimony.

6. Criminal Law—In-Court Identification—Independent Source—Credibility.

The question whether there was an independent source for a witness's in-court identification of the defendant was one of credibility where there had been an illegal lineup and the witness testified, at the hearing to determine if there was an independent source, that she could have positively identified the defendant without the lineup; an appellate court will not substitute its judgment on a witness's credibility in place of the trier of fact's judgment.

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 April 1, 1971, at Grand Rapids. (Docket Nos. 9666, 9674, and 9798.) Decided June 23, 1971.

Alton Major, Constance Okoniewski, and Sandra Magnuson were convicted of armed robbery. Defendants appeal. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Robert F. Leonard*,

Prosecuting Attorney, *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, and *James C. Dillard,* Assistant Prosecuting Attorney, for the people.

*William Goldberg,* for defendant Major on appeal.

*Edward H. Powers,* for defendant Okoniewski on appeal.

*Thomas C. Stipes,* for defendant Magnuson on appeal.

Before: HOLBROOK, P. J., and BRONSON and O'HARA,* JJ.

HOLBROOK, P. J. Defendants were arrested and charged with armed robbery, MCLA § 750.529 (Stat Ann 1971 Cum Supp § 28.797). They were found guilty by a jury and subsequently sentenced, with Alton Major receiving 35 to 40 years imprisonment, Sandra Magnuson receiving 20 to 25 years imprisonment, and Constance Okoniewski receiving 10 to 15 years imprisonment. From the denial of their motion for a new trial, defendants appeal as of right.

On March 2, 1968, at about 11:50 a.m., The Track, a bar in Flint, was robbed. Sandra Hollingstead, an employee of the bar, was alone when a woman entered holding a gun. The woman forced Mrs. Hollingstead into a beer cooler and left with some money.

Another employee of The Track discovered Mrs. Hollingstead in the cooler. The Flint police were called and arrived at the scene shortly thereafter. One officer questioned the two employees while

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

another officer went next door to the Village Party Shoppe.

An employee of the party shop, David Elder, related that at around 10:30 a.m. he saw a gold 1967 Ford, bearing license number VY–1554, parked in a lot near the store facing The Track. This witness observed two females and a dark complexioned man in the car. He noticed the car and remembered the license number because he was afraid these people might be potential robbers of the party store. Elder also indicated, however, that no positive identification could be made of the car's occupants.

The complainant, Mrs. Hollingstead, described her assailant as a white female, around 29 years of age, five feet tall, 115 pounds, and wearing a head covering. Also, Mrs. Hollingstead said that her assailant was wearing gloves and sunglasses, and had a ruddy complexion.

Sergeant Ernest Harbin, the officer in charge of this case, talked with Robert Egan, the bar's owner. This officer concluded that the robber was familiar with the bar's layout because she knew where to get the keys to the liquor cabinet, where the money was kept, and also where to turn off the lights to the bar.

Sergeant Harbin inquired of Mr. Egan whether any of the bar's employees fitted the description of the occupants of the car observed by the party store employee. Mr. Egan gave the officer the names of Connie Okoniewski and Alton Major who were former employees and allegedly fitted the description.

Upon receiving information as to Alton Major's address, officer Harbin sent it out over the police radio along with the robber's description. He also requested a registration check on the car.

Officer William Austin heard the radio broadcast and went to Alton Major's address. He there ob-

served a 1967 Ford bearing the license number of the car in question. This information was relayed to officer Harbin who left the scene of the crime and went to Alton Major's address.

Officer Harbin, along with others, knocked on the door and Sandra Magnuson let the police in. They observed Constance Okoniewski, and based on the description given by Sandra Hollingstead, an arrest was made.

A noise was heard in the basement of the house and, upon investigation, Alton Major was found emerging from a crawl space. He was also placed under arrest. The officer then conducted a search.

Prior to trial, defendants made a motion to suppress the evidence found during the search. A *Walker*-type[1] hearing was held on May 8, 1968, in which the judge found that the arrest was made with probable cause and that the search was made incident to such lawful arrest and was legal. The Court also ruled, however, that it would not permit testimony at trial as to the identification of defendants in a pretrial lineup.

The defendants raise four issues which we restate and consider in order.

# I

Whether the trial court erred in finding that the police had probable cause to arrest defendants?

MCLA § 764.15(d) (Stat Ann 1954 Rev § 28.874 [c]) provides:

"Any peace officer may, without a warrant, arrest a person—

\* \* \*

"(c) When a felony in fact has been committed and he has reasonable cause to believe that such person has committed it."

---

[1] *People* v. *Walker* (on Rehearing, 1965), 374 Mich 331.

The test, under this statute, as to whether an arrest is valid is to determine if the facts before the police at the time of the arrest would warrant a reasonable belief that the person arrested has committed the felony. It has further been required that the arresting officer actually "believe" rather than merely "suspect" that the person arrested has committed the felony. *Chambers* v. *Maroney* (1970), 399 US 42 (90 S Ct 1975, 26 L Ed 2d 419); *People* v. *Kuntze* (1963), 371 Mich 419; *People* v. *Harper* (1962), 365 Mich 494; *People* v. *Herrera* (1969), 19 Mich App 216; *People* v. *Johnnie Mae Jones* (1968), 12 Mich App 369; *People* v. *Pantoja* (1970), 28 Mich App 681; *People* v. *Sansoni* (1968), 10 Mich App 558; generally see, 5 Am Jur 2d, Arrest, §§ 22–25, pp 711–716; 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 220, pp 243–250.

In the instant case, the facts confronting the officers at the time the arrest was made were (1) that an armed robbery of a bar had been committed by a woman; (2) a description of that woman; (3) the license number of an automobile which was occupied by two women (one a redhead) and a man and was outside the bar shortly before the bar was robbed; (4) that the auto in question was parked outside the residence of a former employee of the bar; (5) that facts indicated the robbery was an inside job; and (6) that when they entered the residence two women (one a redhead) were seen, one matching the description of the woman robber.

The trial judge, faced with these facts, ruled that the officers had reasonable cause to believe that the persons within Alton Major's residence had committed the robbery. He affirmed this ruling in his denial of defendants' motion for a new trial. These facts justify his decision and we find no reversible error as to this first issue.

## II

Whether the trial judge erred in ruling that the search and seizure of certain evidence in this case was proper?

In ruling on this issue the trial judge stated:

"In *Harris* v. *United States* [1968], 390 US 234 [88 S Ct 992, 19 L Ed 2d 1067] the United States Supreme Court noted that:

" 'It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.'

"The Michigan Appellate Courts have upheld this doctrine. *People* v. *Tisi* [1969], 16 Mich App 316.

"The articles found within plain view by the officers upon entering the home and the article found in the crawl space after observation of the Defendant Major are within this category."

The defendants' allegation of error does not merit a reversal for two reasons. First, because we have ruled the arrests were valid, the officers were entitled to conduct a limited search of the area within defendants' immediate control for implements by which the crime was committed and for the fruits and evidence of the crime, as well as for weapons. *People* v. *Nelson* (1970), 29 Mich App 251; *People* v. *Herrera, supra; People* v. *Panknin* (1966), 4 Mich App 19; *Chimel* v. *California* (1969), 395 US 752 (89 S Ct 2034, 23 L Ed 2d 685). A review of the record transcribed from the *Walker* hearing indicates no detailed search other than in the area within the defendants' control and therefore, for this reason, the evidence was admissible. Second, from the officers' testimony at the *Walker* hearing, it appears that the evidence seized was within the "plain view" of the officers. Sergeant Ernest Harbin testified

that shortly after he entered the home he noticed a paper sack which contained clothes matching the description of the ones used in the robbery. Later, when the contents of the sack were further explored, checks stolen from The Track bar were discovered.

Officer Wilford Good testified that he heard a noise and went into the basement. He there heard another noise in the basement of an adjoining residence. Alton Major was then observed emerging from a crawl space in that basement brushing dirt from his pant legs. Officer Good observed a gym bag in the crawl space and upon investigation discovered money, checks taken from the bar, and a gun.

The law is clear that a police officer may seize objects within "plain view." *People* v. *Surles* (1970), 29 Mich App 132; *People* v. *Burton* (1970), 28 Mich App 253. See also, *Harris* v. *United States* (1968), 390 US 234 (88 S Ct 992, 19 L Ed 2d 1067); *Katz* v. *United States* (1967), 389 US 347 (88 S Ct 507, 19 L Ed 2d 576); *People* v. *Kuntze, supra.* Since the evidence seized in the instant case was apparently within the plain view of the police officers, it was not error to admit it.

### III

Whether the scope of the search of defendant's residence was illegal as too broad?

In ruling on this issue the trial court said:

"Although the more recent case of *Chimel* v. *California* [1969], 395 US 752 [89 S Ct 2034, 23 L Ed 2d 685], does, in fact limit the scope of searches incident to arrests where there is no search warrant, the Michigan Court of Appeals in *People* v. *Herrera* [1969], 19 Mich App 216, has determined that the United States Supreme Court opinion was not to be applied retroactively. Federal cases which have also determined *Chimel* not to be retroactive are

*United States* v. *Frazier,* [D Md, 1969], 304 F Supp 467, and *Lyon* v. *United States* [CA5, 1969], 416 F2d 91.

"Therefore, the limitation of Chimel is not applicable to the present instance and the standard in *Harris* was in effect at the time of the trial of the present issue."

In addition to the fact that *Chimel* v. *California* does not apply to this case because it is not retroactive, *People* v. *Herrera, supra,* the scope of the instant search was not too broad. As indicated in the discussion of the previous issue, the evidence seized by police was taken incident to a lawful arrest and in "plain view." The police apparently conducted no further search. It cannot be said that the scope of the search was too broad and, therefore, no error was committed.

## IV

Whether the in-court identification of defendant Sandra Magnuson was tainted by a pretrial lineup identification and, therefore, improper?

Defendants argue that the trial court committed reversible error in allowing the in-court identification of Sandra Magnuson because such identification was tainted by a pretrial lineup where this defendant was not represented by counsel. It is a fact, defendant submits, that once a witness identifies a person at a lineup, that witness is not likely to change his mind at trial.

When this issue came up on the motion for a new trial, the trial court ruled:

"Reference is made to the identification of the defendant Magnuson at the time of trial as being tainted by the lineup identification which the court, in a separate hearing, had determined to be invalid.

"A review of the testimony clearly shows that that identification by the victim, Hollingstead, had been based upon the identification of her assailant garnered at the time of the robbery.

"This view is in keeping with *Commonwealth* v. *Whiting*, [1969], 216 Pa Sup 92 (259 A2d 176); *Wong Sun* v. *United States* [1963], [371 US 471 (83 S Ct 407, 9 L Ed 2d 441)].

"In *People* v. *Childers* [1970], 20 Mich App 639, the rule is stated:

" 'An in-court identification may still be made if, but only if, the prosecution is able to "establish by fair and convincing evidence that the in-court identification (is based) upon observations of the suspect other than the lineup identification." '

"The court, in reviewing the entire issue, has determined the standard of *People* v. *Childers* was met and the identification of Magnuson so qualifies."

Since the trial judge ruled that the lineup identification would be excluded, the question is whether the in-court identification was made independently of the lineup confrontation. *Wong Sun* v. *United States* (1963), 371 US 471 (83 S Ct 407, 9 L Ed 2d 441). Some of the criteria for making this determination were supplied in *United States* v. *Wade* (1967), 388 US 218, 241 (87 S Ct 1926, 18 L Ed 2d 1149, 1165):

"[T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup."

At the *Walker* hearing, Sandra Hollingstead identified Sandra Magnuson as follows:

"*Q.* Now, do you see this woman in court today?
"*A.* Yes, I do.
"*Q.* Would you please point her out?
"*A.* The third lady in the first row (*indicating*).
"*Mr. Anastor:* I would like the record to reflect that the witness has identified the respondent, Sandra Magnuson.
"*The Court:* It may so indicate.
"*By Mr. Anastor:*
"*Q.* Did you view a lineup, ma'am?
"*A.* Yes.
"*Q.* And, where was this held at?
"*A.* Police station.
"*Q.* And, did you notice her hair color at that time?
"*A.* Yes.
"*Q.* Could you please tell us what color her hair was?
"*A.* It was dark, with the effects of a tint growing out.
"*Q.* Could you explain this?
"*A.* Well, the ends of her hair were reddish, her hair was at shoulder length.
"*Q.* Was the hair any different than it is today?
"*A.* Yes.
"*Q.* In what way.
"*A.* It is lighter—shorter.
"*Q.* It has been cut?
"*A.* It certainly has.
"*Q.* Now, without this lineup, and disregarding the lineup at the police station, could you identify this woman?
"*A.* I think so.
"*Q.* And, is this based on your observing her at the time of the robbery?
"*A.* Yes.
"*Mr. Anastor:* I have nothing further of her, your Honor.

"*The Court:* Very good. Gentlemen, would you like to examine her?

"*Cross Examination*

"*By Mr. Caswell:*

"*Q.* In response to the last question by the prosecutor, did you say, 'I think so'?

"*A.* I believe so.

"*Q.* You are not absolutely sure?

"*A.* I am absolutely sure.

"*Q.* Then, your answer to her question is not 'I think so', but, you definitely could?

"*A.* Yes.

"*Q.* Do you know the defendant, Sandra Magnuson—did you know her before?

"*A.* No, I didn't."

At trial, this witness again identified Mrs. Magnuson.

In *People* v. *Nugent* (1969), 21 Mich App 58, 64, this Court, in discussing a similar issue, said:

"It seems to us that on the present record the complainant's testimony if believed, sustains the trial court's finding and consequently its ruling. The question whether there was an independent source thus narrows to one of credibility. This Court will not substitute its judgment on the credibility of a witness for that of the trier of fact. *People* v. *Szymanski* (1948), 321 Mich 248; *People* v. *Williams* (1966), 3 Mich App 272. The trial court, sitting as the trier of fact at the hearing, chose to believe the complainant's testimony. Accordingly, we find no error in allowing the complainant to identify the defendant in the presence of the jury."

Turning to the instant case, it appears that the trial judge believed Mrs. Hollingstead when she stated in court that she could identify this defendant. Since credibility is a matter for the trier of fact, that decision should not be disturbed. *People* v. *Nugent, supra.* Additionally, in view of the evidence

found in Alton Major's home and the other evidence in the case, it appears that if any error did occur it was "harmless". *People* v. *Childers* (1969), 20 Mich App 639. The trial court's determination that the identification made at trial was based on the identification of the defendant at the robbery was justified.

Affirmed.

All concurred.