PEOPLE v MULLANEY

Docket No. 78-4257. Submitted March 12, 1980, at Detroit.—Decided
April 7, 1981. Leave to appeal applied for.

Edith A. Mullaney was convicted of first-degree murder, Monroe
Circuit Court, James J. Kelley, Jr., J. Defendant appeals,
alleging *inter alia* that the trial court erred by allowing the use
of a prior manslaughter conviction for impeachment of the
defendant, that a bag containing bloodstained clothing should
have been suppressed from evidence, and that her motion for a
directed verdict on first-degree murder should have been
granted because the prosecutor failed to present any evidence
of premeditation and deliberation. *Held:*

1. The trial judge viewed the similarity of the manslaughter
conviction to the murder charge as a factor in favor of admis-

REFERENCES FOR POINTS IN HEADNOTES

[1, 9] 29 Am Jur 2d, Evidence §§ 320, 327.

Construction and application of Rule 609(b) of Federal Rules of
Evidence, setting time limit on admissibility of evidence of convic-
tion of crime to attack credibility of witness. 43 ALR Fed 398.

[2] 68 Am Jur 2d, Searches and Seizures §§ 42-44, 89, 99.

Searches without warrant. 13 L Ed 2d 142.

[3] 68 Am Jur 2d, Searches and Seizures §§ 2, 16, 46, 49, 50, 111.

Authority to consent for another to search and seizure. 31 ALR3d
1078.

Admissibility of evidence discovered in search of defendant's prop-
erty or residence authorized by defendant's adult relative other
than spouse—state cases. 4 ALR4th 196.

Admissibility of evidence discovered in search of defendant's prop-
erty or residence authorized by defendant's relative. 48 ALR Fed
131.

[4, 6] 68 Am Jur 2d, Searches and Seizures §§ 23, 88.

Search and seizure: observation of objects in "plain view." 26 L Ed
2d 1067.

[5] 40 Am Jur 2d, Homicide §§ 47, 52, 274, 280.

[7] 5 Am Jur 2d, Appeal and Error § 881.

29 Am Jur 2d, Evidence §§ 320, 327.

Right to impeach credibility of accused by showing prior conviction,
as affected by remoteness in time of prior offense. 67 ALR3d 824.

[8] 29 Am Jur 2d, Evidence §§ 320, 327.

sion of evidence of that conviction. This was error requiring reversal.

2. The police seized the bag of clothing from the defendant's bedroom. They had entered the house without a warrant and the defendant's sister told them of the clothing. Although the bag of clothing was visible from the common area of the living room where the police were talking with the sister, the police had entered the living room prior to obtaining the sister's consent, therefore they were not legally in a position to seize the clothing. This evidence should have been suppressed.

3. The defendant's motion for a directed verdict on first-degree murder was properly denied. The evidence of premeditation and deliberation was not insufficient as a matter of law.

Reversed and remanded.

V. J. BRENNAN, J., dissented. He would hold that on the facts of this case the initial intrusion of the police into the house was with the consent of the defendant's sister and the bag of clothing was therefore properly seized under the plain view exception to the warrant requirement. Also, Judge BRENNAN would hold that the trial court recognized its discretion to exclude the evidence of the prior manslaughter conviction and that, within the context of this case, the ruling to admit that evidence was not an abuse of discretion. The similarity of the prior conviction is only one factor to be considered in determining admissibility. Judge BRENNAN would affirm.

OPINION OF THE COURT

1. CRIMINAL LAW — PRIOR CONVICTIONS — SIMILAR OFFENSES.

The similarity between an offense for which a defendant has already been convicted and the one for which the defendant is presently standing trial is a factor weighing against admitting evidence of the former offense to impeach the defendant at the subsequent trial.

2. SEARCHES AND SEIZURES — SEARCHES WITHOUT WARRANT — PROBABLE CAUSE — EXIGENT CIRCUMSTANCES.

The burden rests upon the people to demonstrate that the police acted with probable cause in a reasonable manner and in response to exigent circumstances in order to sustain the validity of a search without a warrant under one of the specifically established exceptions to the warrant requirement.

3. SEARCHES AND SEIZURES — CONSENT — EXPECTATION OF PRIVACY.

A defendant's sister, who lived in the same house as the defendant, could consent only to a search of the common areas of the

house and of her own bedroom; she could not consent to a search of the defendant's bedroom, in which the defendant would have had a reasonable expectation of privacy.

4. SEARCHES AND SEIZURES — PLAIN VIEW.

Evidence is not admissible which was seized by police without a warrant where, although the evidence was within plain view, the police were not legally in a place where they could see the evidence.

5. HOMICIDE — PREMEDITATION AND DELIBERATION.

Factors to be considered when determining whether a defendant in a murder case had an opportunity to give his actions a "second look", thus allowing a finding of premeditation and deliberation, include the previous relationship between the parties, the defendant's actions prior to the killing, the circumstances of the killing itself, and the defendant's conduct after the killing.

DISSENT BY V. J. BRENNAN, J.

6. SEARCHES AND SEIZURES — PLAIN VIEW.

*The seizure of objects within the plain view of an officer, lawfully in the place where he has a right to be, is not proscribed by the constitution; the most crucial inquiry is how the police officer came to be in the position from which he was able to view the objects seized.*

7. APPEAL — CRIMINAL LAW — PRIOR CONVICTIONS — JUDGE'S DISCRETION.

*The Court of Appeals, in assessing a trial court's decision to admit evidence of a defendant's previous convictions for impeachment purposes, must determine if the trial court positively indicated and identified its discretionary power to exclude such evidence; if so, the trial court's decision may be reversed only upon a clear showing of abuse of discretion.*

8. CRIMINAL LAW — PRIOR CONVICTIONS — IMPEACHMENT.

*A trial court should balance the probative value of admitting evidence of a defendant's prior convictions for purposes of impeachment against the prejudicial effect of such evidence, within the context of the particular fact situation confronting the court at the time.*

9. CRIMINAL LAW — PRIOR CONVICTIONS — SIMILAR OFFENSES.

*Similarity of a prior offense to the offense for which a defendant is on trial is a factor to be weighed against admission of*

*evidence of the prior conviction to impeach the defendant;
however, it is not the sole determinative factor.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Michael W. LaBeau,* Prosecuting Attorney, and *Mitchell H. Nelson,* Assistant Prosecuting Attorney, for the people.

*Peter Jon Van Hoek,* Assistant State Appellate Defender, for defendant on appeal.

Before: BRONSON, P.J., and V. J. BRENNAN and T. M. BURNS, JJ.

T. M. BURNS, J. Defendant appeals of right her February 7, 1978, jury conviction of first-degree murder. MCL 750.316; MSA 28.548. On August 10, 1978, she was sentenced to a term of life imprisonment.

Defendant raises a number of issues in this appeal. However, we find that only three of them merit our discussion.

Defendant first alleges that the trial judge erred by allowing the prosecutor to use a prior manslaughter conviction to impeach her. Before trial, defendant filed a motion to bar any reference to her prior conviction at trial. Opposing the motion, the prosecutor argued that the fact that the prior conviction was for manslaughter, a crime similar to the one for which defendant was presently standing trial, should be considered by the judge as a factor dictating in favor of admitting evidence of that conviction for impeachment purposes. In denying defendant's motion, the judge stated:

"I believe that a person charged with murder who has been previously convicted of homicide, which is the killing of a human being, would be more apt to be less truthful in testifying at the murder trial * * *."

This was error. The similarity between an offense for which the defendant has already been convicted and the one for which that defendant is presently standing trial is a factor that should weigh against admitting evidence of the former to impeach the defendant at the subsequent trial. The more similar the conviction is to the offense for which the defendant is being tried, the more hesitant a trial judge should be in permitting admission of evidence of the conviction. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974). It is error for a trial judge to weigh the similarity of the prior offense as a factor in favor of admissibility. *People v Baldwin,* 405 Mich 550, 553; 275 NW2d 253 (1979). Therefore, we hold that defendant's conviction must be reversed and this cause remanded for a new trial.

Defendant next claims that the trial judge erred in failing to suppress certain evidence seized from her house on the night of the crime. This evidence consisted of a bag containing bloodstained clothing that was taken from defendant's bedroom by the police.

Testimony at a pre-trial evidentiary hearing on defendant's motion to suppress this evidence established that the police entered her house without a search warrant and without her permission after having first arrested her and an alleged codefendant on the front porch of her house. Once inside, the police knocked on a bedroom door and identified themselves. Thereupon, defendant's sister, who was living in the house at the time, came out of the bedroom. She gave the police permission to search the house and told them that there was a bag of clothing located in the defendant's bedroom. One of the police officers testified at the evidentiary hearing that he could see the bag through

the open door of the bedroom. The sister testified that her consent for the search was given only after the police had already commenced searching the house and after she was informed by them that a search warrant was on its way. In fact, no warrant had been sought.

To sustain the validity of a warrantless search, the burden rests upon the people to demonstrate that the police acted with probable cause in a reasonable manner and in response to exigent circumstances bringing the search under one of the specifically established exceptions to the warrant requirement. *People v Murphy,* 87 Mich App 461; 274 NW2d 819 (1978). It is unclear from our review of this case whether the trial judge relied upon the purported consent of defendant's sister or upon the plain view exception to the warrant requirement when he held that the search was not invalid. In either event, we find neither exception to the warrant requirement applicable in this case.

Defendant's sister could only consent to a search of the common areas of the house and to a search of her own bedroom. She could not consent to a search of defendant's bedroom, a place where the defendant had a reasonable expectation of privacy. *People v Chism,* 390 Mich 104; 211 NW2d 193 (1973), *People v Taylor,* 67 Mich App 76; 240 NW2d 273 (1976). Furthermore, the facts of this case indicate that defendant's sister's consent to the search was not voluntary, but was given under circumstances which indicated that her refusal would be futile. The police falsely stated to her that a search warrant was on its way and, further, they had begun searching the house before any consent by the sister was obtained. See, *Bumper v North Carolina,* 391 US 543; 88 S Ct 1788; 20 L Ed 2d 797 (1968), *People v Ricky Smith,* 85 Mich App 32; 270 NW2d 697 (1978).

In the present case, the police had no right to be in defendant's house because they entered it without a warrant, without defendant's consent, and the purported consent given by defendant's sister came only after the police were already inside the house and was not voluntary. Therefore, the police were not legally in a position to seize the bag of clothes found in defendant's bedroom. We hold that neither consent nor the plain view exception to the warrant requirement justified the search conducted by the police. Consequently, the evidence uncovered by the police while conducting that illegal search should have been suppressed.

Defendant also claims that the trial judge erred by refusing to grant her motion for a directed verdict on first-degree murder because the prosecutor failed to present at trial any evidence of premeditation and deliberation. In *People v Morrin,* 31 Mich App 301, 329-330; 187 NW2d 434 (1971), this Court defined premeditation and deliberation in the following manner:

"To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem. As a number of courts have pointed out, premeditation and deliberation characterize a thought process undisturbed by hot blood. While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look'."

Factors to be considered when determining whether an accused had an opportunity to give his actions a "second look" include consideration of the previous relationship between the parties, the accused's actions prior to the killing, the circum-

stances of the killing itself, and the accused's conduct after the homicide. *People v Meadows,* 80 Mich App 680, 691; 263 NW2d 903 (1977).

We hold that the lower court did not err in denying defendant's motion. Although there was introduced at trial no evidence of a bad relationship between defendant and the victim prior to the killing, a reasonable person could conclude that defendant's conduct after the killing suggested a planned cover-up. Even though evidence tending to establish that defendant acted with premeditation and deliberation is scant, we cannot say that it is, as a matter of law, insufficient.

No other issue raised by defendant in this appeal amounts to error. Reversed and remanded for a new trial.

BRONSON, P.J., concurred.

V. J. BRENNAN, J. *(dissenting).* I respectfully dissent. The majority opinion holds that neither consent nor the plain view exception to the warrant requirement justified the search conducted by the police and, hence, the evidence should have been suppressed. I disagree. Under the facts and circumstances of this case, the "plain view" doctrine is applicable, and no "search" for Fourth Amendment purposes ever took place.

The "plain view doctrine" is best set forth in the oft-cited passage found in *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973), where the Michigan Supreme Court said:

"As stated by the United States Supreme Court in *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971), the basic constitutional rule in this area is that searches conducted outside the judicial process, without prior approval by judge or magistrate,

are per se unreasonable under the Fourth Amendment
—subject only to a few specifically established and well
delineated exceptions.

   "However, before the above rule can be applied, and
the exceptions to it come into play, it first must be
established from the facts before the court, that a
search did in fact take place for Fourth Amendment
purposes.

   "From *Katz v United States,* 389 US 347; 88 S Ct 507;
19 L Ed 2d 576 (1967), there was evolved a test, applied
by the courts, to determine whether or not a search, by
Fourth Amendment standards, has indeed taken place.
Simply put, if an individual has a reasonable expecta-
tion of privacy in the area searched, or the materials
seized, a search has been conducted. 'What a person
knowingly exposes to the public, even in his own home
or office, is not a subject of Fourth Amendment protec-
tion.' *Katz, supra,* 351.

   "Thus seizure of objects within the plain view of an
officer, lawfully in a place where he had a right to be,
are not proscribed by the Constitution. *United States v
Lee,* 274 US 559; 47 S Ct 746; 71 L Ed 1202 (1927)."

   See also *People v Harden,* 54 Mich App 353, 357-
358; 220 NW2d 785 (1974), *People v Chapman,* 73
Mich App 547, 551; 252 NW2d 511 (1977).

   Hence, as this Court has repeatedly recognized,
the critical requisite for the plain view doctrine is
that the police have a legitimate right to be where
they are when they "inadvertently" view the in-
criminating evidence. If this requisite is satisfied,
then the plain view doctrine applies and the sei-
zure of the evidence falls outside of the Fourth
Amendment proscription.

   "Under the plain view doctrine, by which the instant
seizure is justified, the most crucial inquiry is how the
police officer came to be in the position from which he
was able to view the materials seized. Once rightfully in
such a position, he has a right, if not a duty, to seize
objects which he has a reasonable basis for believing

are fruits or implements of a crime, contraband, or evidence. See *People v Hunter,* 72 Mich App 191; 249 NW2d 351 (1976), *United States v Williams,* 385 F Supp 1400 (ED Mich, 1974). The Fourth Amendment provides no protection to such objects which are knowingly exposed. *Katz, supra,* p 351." *People v Chapman, supra,* 552.

The Courts have found various justifications for the initial intrusion that brings the police within the plain view of the object seized. Permissible automobile stops, search incident to lawful arrest, "hot pursuit", and consent to or invitation of the officer's presence have been held to be adequate justification for the police officer's presence. *Coolidge v New Hampshire, supra, People v Chapman, supra, People v Harden, supra, People v Major,* 34 Mich App 405; 191 NW2d 494 (1971), *People v Lynn,* 91 Mich App 117; 283 NW2d 664 (1979). Germane to the instant case is the fact that consent or invitation to be on the premises is a legitimate reason for the initial intrusion which triggers the plain view doctrine. The consent is to be on the premises and hence within "plain view" and is legally distinct from consent to search.

In the instant case, the critical intrusion of the police officer's presence at the residence which was shared by the defendant and her sister is justified by the sister's consent for the officer to enter the home. Having rightfully entered the home, the seizure of the objects is protected by the "plain view" exception to the warrantless seizure.

An examination of the facts will bring into sharper focus the events that transpired.

On the morning in question, July 31, 1977, Taylor police officer Thomas Moore heard a police description of a vehicle and two persons involved in a homicide. Crucial to this bulletin was the

information that there might be a wheelchair in the vehicle. Moore matched the description given to his personal knowledge of the Mullaneys, and proceeded to their home. At approximately 3:20 a.m., Moore and his partner Knapp arrived at the home. Defendant and codefendant Hickey were seated on an outside porch. Moore also saw a car parked in back matching the given description. Looking into the car, Moore saw a lawnchair with bloodstains on it. Moore further saw that defendant had a bleeding wound on her arm. The officers arrested both defendant and Hickey. While defendant was being placed in the police car, the officers entered the home looking for Leo Mullaney who they then thought to be a coperpetrator of the homicide rather than the victim. Upon entry into the home, a styrofoam cooler covered with blood was plainly visible immediately within the front door. During this entry into the home, these officers awakened defendant's sister, Ms. Scallions, and defendant's nephew who were asleep in one of the two bedrooms. After ascertaining that Leo Mullaney was not in the house, the two officers left the home. During this entry into the home, nothing was taken although, without question, the seizure of the styrofoam ice cooler fell within the plain view exception.

Subsequent to the exit of the Taylor police officers from the home and defendant's conveyance to the police station, State Trooper Larry Boger arrived on the scene. At this point, there were no officers within the home. Boger now knew that Leo Mullaney was the victim of the homicide and that the defendant was under arrest for his murder. Boger then began what can best be characterized as a routine investigation of the murder. His testimony establishes that his entry into the home

was by consent of Ms. Scallions, a resident of the home.

"BY MR. JONES *[defense attorney]*:
"*Q.* Were you invited into the house?
"*A.* Yes, sir.
"*Q.* By whom?
"*A.* Mrs. Scallions.
"*Q.* Where was she when she did that?
"*A.* Standing at the front door.
"*Q.* Did you ask her if you could come in or did she make the first remarks?
"*A.* I asked her if I might talk to her, and she said 'yes, won't you step inside', or something to this effect.
"*Q.* And so you did?
"*A.* Yes.
"MR. JONES: I don't have anything further, your Honor.
"MR. LAVOY *[prosecutor]*: No further questions.
"THE COURT: Did you know anything about the bag before you talked to Mrs. Scallions?
"*A.* No, sir."

By Ms. Scallions' consent, Officer Boger then entered into the living room, a common area of the home. He then began to relate to her the known facts of the murder. Early in this discussion, Ms. Scallions voluntarily told Boger that there was a bag of bloody clothes in the defendant's bedroom and pointed in the direction of the bedroom. Boger unequivocally testified that this open bag of bloody clothes was in plain view from the living room where he was standing after Scallions' consent for him to enter this shared area of the home.

"During my conversation with Mrs. Scallion[s], she indicated that there was a bag of clothing, and later she said 'bloody clothing', in the bedroom. I don't recall her

saying Edith's or Leo's, but she indicated with her hand, pointed in the direction of the bedroom located in the northwest corner of the house, and upon just looking in that direction, there was a paper bag, a brown paper bag, with clothing material and a towel—laying right on top was a towel with a large dark spot. When I looked at it closer, it appeared to me that this was blood stained, so I took the entire bag."

Finally, Boger's testimony established that the discovery of the bag of bloody clothes was inadvertent. He testified that he knew nothing about the bag prior to Scallions' voluntary revelation of its presence.

Thus, upon the facts and circumstances of this case, I conclude that Officer Boger's entry into the living room was by Ms. Scallions' consent, *i.e.,* he was rightfully in the position from which he was able to view the materials seized. Once in the living room, the open bag of bloody clothing was in plain view. And, finally, the discovery was inadvertent, *i.e.,* Scallions voluntarily revealed its presence to Boger. Hence, the seizure of the bag clearly falls within the plain view exception to the warrant requirement.

Additionally, I note that the instant case parallels the fact situation described in *Coolidge v New Hampshire, supra,* where the United States Supreme Court rejected petitioner's contention that evidence obtained from his wife was violative of the Fourth Amendment. After Coolidge had been arrested, the police returned to his home to interrogate his wife. During this interview, the wife voluntarily brought out the incriminating evidence and permitted the police to take it. The Supreme Court rejected the claim that this course of conduct amounted to a search and seizure. After noting that it was not the underlying purpose of

the Fourth Amendment to discourage citizens from aiding to the utmost of their ability in the apprehension of criminals, the Court went on to state:

"Once Mrs. Coolidge had admitted them, the policemen were surely acting normally and properly when they asked her, as they had asked those questioned earlier in the investigation, including Coolidge himself, about any guns there might be in the house. The question concerning the clothes Coolidge had been wearing on the night of the disappearance was logical and in no way coercive. Indeed, one might doubt the competence of the officers involved had they not asked exactly the questions they did ask. And surely when Mrs. Coolidge of her own accord produced the guns and clothes for inspection, rather than simply describing them, it was not incumbent on the police to stop her or avert their eyes." 403 US 443, 488-489.

The above language aptly describes the instant case and, hence, provides additional support for concluding that the evidence need not be suppressed.

I also disagree that the trial court erred in denying defense counsel's motion *in limine* to bar the use of defendant's prior conviction for impeachment purposes.

In assessing the trial court's decision to admit such evidence, this Court must determine if the trial court positively indicated and identified its discretionary power to exclude evidence of prior convictions for impeachment purposes. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), *People v Cherry,* 393 Mich 261; 224 NW2d 286 (1974), *People v Worden,* 91 Mich App 666; 284 NW2d 159 (1979), *People v Love,* 91 Mich App 495; 283 NW2d 781 (1979).

In the instant case, the record clearly indicates

that the trial court complied with this requirement. In denying the motion *in limine,* the trial court recognized the discretionary nature of its determination.

Further, this discretionary power entrusted to the trial court may be reversed by this Court only upon a clear showing of abuse of discretion. *Worden, supra, People v Merritt,* 396 Mich 67, 80; 238 NW2d 31 (1976). While there are guidelines for this exercise of discretion, there is no absolute formula. Rather, it is expected that the trial court will balance the probative value of admitting this evidence on the issue of credibility against the prejudicial effect within the context of the particular fact situation confronting the trial court as it makes its determinations. *People v Jones,* 98 Mich App 421; 296 NW2d 268 (1980), *People v Worden, supra.*

"The discretion granted the trial court in this instance concerns the weighing of the probative value of evidence of a defendant's prior conviction against the prejudicial effect introduction of such evidence will have. The exercise of this discretion envisions a decision by the trial court based upon its evaluation of the given fact situation, rather than the application of any rigid legal standard, and the *Spalding [v Spalding,* 355 Mich 382; 94 NW2d 810 (1959)] standard should be utilized to determine whether its discretion was abused." *Worden, supra,* 676.

A fair reading of the record convinces me that the trial court did not abuse its discretion in ruling that evidence of defendant's conviction for manslaughter could be used to impeach her testimony. The trial court acknowledged that it was aware of all the factors to be considered. *People v Roberson,* 90 Mich App 196; 282 NW2d 280 (1979). Most importantly, the trial court was cognizant of

the *Jackson-Luck-Gordon* criteria that similarity of the prior offense is a factor to be weighed against the admissibility of evidence of the conviction. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974), *Luck v United States,* 121 US App DC 151; 348 F2d 763 (1965), *Gordon v United States,* 127 US App DC 343; 383 F2d 936 (1967). However, the similarity of the offense is not the sole determinative factor. *People v Love, supra, People v Worden, supra, People v Jones, supra, People v Parker,* 96 Mich App 80; 292 NW2d 167 (1980). It is but one factor which the trial court must consider in reaching its determination. In light of the entire proceeding on the motion *in limine,* I am convinced that the trial court did not misapply the similarity factor. Rather, it appears that the quoted statement of the trial court, placed in proper context, reflects its final conclusion that the probative value of the evidence of defendant's prior conviction on her credibility outweighs its prejudicial effect. Finally, it is noted that the offense is not identical albeit it is similar. The defendant did take the stand and testify on her own behalf. And, in light of her particular defense, there was no alternative means of impeaching her under the given circumstances. *People v Parker, supra, People v Jones, supra.* Consideration of all these factors convinces me that the trial court did not abuse its discretion in this matter.

I would affirm the defendant's conviction.