**Richmond**

CHARLES WALLS

v.

COMMONWEALTH OF VIRGINIA

No. 0100-85

Decided August 5, 1986

COUNSEL

Tandy B. Rinehart, for appellant.

Marla Lynn Graff, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.**—Charles Walls was convicted of grand larceny and of breaking and entering with intent to commit larceny. On appeal he contends that evidence found in his residence by police officers, who entered without a warrant, should have been suppressed as the product of an illegal search. The Commonwealth contends that the officers entered Walls' residence with implied consent or by invitation. It further argues that the subsequent search was valid because it was consented to by Walls' fiancée, Joyce Fox, who appeared to be sharing the residence with him. We find that the officers' entry was in violation of the Fourth Amendment and that because Fox's consent was obtained as a result of the illegal entry, it was ineffective to validate the search. Because there was no valid consent for the search, no warrant and no recognized exception to justify a warrantless search, all evidence obtained during the search must be suppressed. We further find that the court's error in admitting these items was not harmless beyond a reasonable doubt and we, therefore, reverse.

## I. *FACTS*

Several police officers representing different jurisdictions knocked on the door of Walls' trailer at approximately nine o'clock p.m. on March 21, 1984. The officers had a warrant for Walls' arrest. Walls opened the door and stepped outside, leaving the door open behind him. He was arrested on the porch of the

trailer and led to a police car. As Walls was being led away, Officer Hall of the Caroline County Sheriff's Department went up onto the porch to see if anyone was inside the trailer. Hall noted that the door was open and observed Ms. Fox standing in the living room, dressed in her nightgown. He then walked inside the trailer and informed Fox that Walls had been arrested. Hall did not ask either Walls or Fox for permission to enter the trailer, nor did he consider securing the trailer until a search warrant could be obtained.

Once inside, Hall asked Fox for permission to search the trailer. She agreed. A written consent form was prepared by Hall and signed by Fox. According to Hall, none of the officers searched the trailer prior to the consent, although some of them had followed him inside. During this time, Walls remained outside in a police car. The police asked for permission to search his car. Walls consented. At the suppression hearing, Walls was asked whether he would have consented to a search of the trailer if anyone had asked him and he replied that he would have.

The search of the trailer lasted approximately two hours. Various items of stolen property were recovered. At trial, the Commonwealth introduced three of the items found in Walls' trailer. A pair of binoculars, later identified by the victim of the burglary, was found in a drawer in Walls' bedroom. A ladies watch and a gold medallion, also later identified as belonging to the victim, were found in two locked metal boxes under Walls' bed.

At the suppression hearing, Officer Hall explained how he obtained consent from Walls for a search of the two metal boxes. Hall stated: "[W]hen we got back to Bowling Green, the Caroline Sheriff's office, I was talking to him (Walls) about these cases. At that time, I told him I would like to look in the two metal boxes, but they were locked. He furnished me a key and signed the consent form for me to open them."

A pre-trial motion was made to suppress the items found in the trailer. Walls argued that the officers' entry was illegal and that under *Wong Sun* v. *United States*, 371 U.S. 471 (1963), the evidence obtained as a result of the subsequent search should be suppressed as "fruit of the poisonous tree." The court denied this motion, ruling that under *United States* v. *Matlock*, 415 U.S. 164 (1974), Fox had given a valid third party consent to the trailer

search. The court further indicated its belief that Fox's consent cured any illegality in the officers' entry.[1]

## II.  *THE WARRANTLESS ENTRY*

The first question we address is whether Officer Hall's warrantless entry into Walls' residence violated the Fourth Amendment. The court below did not specifically rule on this issue, finding only that Fox's consent was valid and that this cured any illegality which may have occurred as a result of the entry. We believe that the legality of the entry must be addressed, however, because in *Matlock*, the Supreme Court dealt only with the question whether a third party can give a valid consent to search jointly controlled property. It did not deal with the issue whether the police officers had lawfully entered the premises before obtaining that consent.[2] Since we disagree with the trial court's conclusion that the validity of Fox's consent was unaffected by the manner of the entry, we first address that issue.

The Commonwealth has sought to justify the warrantless entry primarily on the basis that Walls and Fox impliedly invited an entry by leaving the door open and by failing to object when the police went inside. In addition, the Commonwealth has argued that the officers were entitled to enter the trailer after Walls' arrest to establish whether anyone else was present or to secure the trailer until a search warrant could be obtained.

The Supreme Court's decisions regarding warrantless entries into private homes are unambiguous. In *Payton* v. *New York*, 445 U.S. 573 (1980), the Court stated: "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at 590.

More recently in Welsh v. *Wisconsin*, 466 U.S. 740 (1984), the Court elaborated on the reasoning behind this rule:

---

[1] During the suppression hearing the court stated: "Walking through the front door doesn't bother me because if she (Fox) did have the authority (to consent to the subsequent search) I think it doesn't matter. I think everything before and prior was wiped out."

[2] In *Matlock*, the court stated: "Three of the arresting officers went to the door of the house and *were admitted* by Mrs. Graff." 415 U.S. at 166 (emphasis added).

It is axiomatic that "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. It is not surprising, therefore, that the Court has recognized, as "a 'basic principle of Fourth Amendment Law' that searches and seizures inside a home without a warrant are presumptively unreasonable."

*Id.* at 748-49.

It is well settled that the burden is on the Commonwealth to establish an exception to the warrant requirement. *United States* v. *Jeffers*, 342 U.S. 48, 51 (1951); *see Verez* v. *Commonwealth*, 230 Va. 405, 410-11, 337 S.E.2d 749, 753 (1985). In the present case, the Commonwealth has sought to establish that no warrant was required because there was an implied consent to the entry. Where the police enter a home with consent, whether implied or express, no warrant is required. *United States* v. *Griffin*, 530 F.2d 739, 742 (7th Cir. 1976). The prosecution, however, bears the burden of establishing consent and this burden is heavier where the alleged consent is based on an implication. *United States* v. *Impink*, 728 F.2d 1228, 1232 (9th Cir. 1984).

The standard for determining the voluntariness of a consent is found in *Schneckloth* v. *Bustamonte*, 412 U.S. 218 (1973). In that case, the Supreme Court stated: "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances. While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." 412 U.S. at 227.

Our review of the facts in the present case convinces us that the Commonwealth has failed to carry its burden of proving that Officer Hall's entry was consensual. Initially, we note than an open door does not, alone, constitute an invitation to enter. *United States* v. *Wenzel*, 485 F. Supp. 481, 483 (D. Minn. 1980). Despite Officer Hall's opportunity to ask either Walls or Fox for permis-

sion to enter, he took it upon himself to do so without asking.[3] His right to do so was not established by Walls' failure to reach behind him and shut the door to the trailer before being led away in handcuffs. We do not construe this omission as an invitation to enter.

Neither can the Commonwealth establish an implied invitation or consent through the actions of Fox. As related by Officer Hall, the only thing Fox did was stand in the living room in her night-clothes and silently watch as Hall walked through the open door showing a badge and saying: "I'm Captain Hall from the Sheriff's Office in Caroline." We do not believe that these circumstances can reasonably be construed as an entry by invitation. As stated in *Wenzel*, "most persons when not fully clothed do not explicitly or impliedly consent to another person's entry." 485 F. Supp. at 483. The court in *Wenzel* made another observation relevant to the Commonwealth's contention here, namely, that if Fox had objected to the officers' entry, she should have voiced it as they were coming through the door. In response to a similar argument, the *Wenzel* court noted: "When . . . police officers suddenly appear uninvited in one's apartment, one's initial reaction is shock, not an immediate order to leave." *Id.*

If anything was being implied as Officer Hall walked through the door, it was that Ms. Fox had no choice whether or not he came in. Although under *Schneckloth*, Hall was not required to warn Fox of her right to withhold consent, his failure to do so is one factor to be considered in determining whether the totality of the circumstances show a consensual entry. Under the totality of the circumstances, and keeping in mind that the Commonwealth bears a heavier burden where the alleged consent is based upon inferential conduct, we find that the Commonwealth has failed to establish a consensual entry in this case.

The Commonwealth has also sought to justify the entry on the grounds that the arresting officers had the right to determine whether anyone was in the trailer, and to secure the trailer while a search warrant was being obtained. We find that neither of these

---

[3] At the suppression hearing, the following colloquy took place between defense counsel and Officer Hall:

Q. But did you ever ask anyone, Joyce (Fox) or Mr. Walls if you could go into that trailer?
A. No. Like I said, the door was open and I walked through it.

justifications are applicable here.

■ The right of the police to make a warrantless entry, absent consent, depends upon the existence of probable cause and exigent circumstances. *Keeter* v. *Commonwealth*, 222 Va. 134, 140-41, 278 S.E.2d 841, 845, *cert. denied*, 454 U.S. 1053 (1981). In *Keeter*, the court explained that "an exigent circumstance exists justifying such an entry where the law enforcement officers have probable cause to believe that it is necessary to prevent destruction of evidence." *Id.* at 141, 278 S.E.2d at 846. The court further stated: "[I]n each case, a determination must be made whether the law enforcement officers had probable cause at the time of their warrantless entry to believe that cognizable exigent circumstances were present." *Id.*

The facts in Keeter involved a controlled purchase of marijuana. The police had observed a suspect leaving a house which was under surveillance. The suspect was carrying marijuana that was to be the subject of the purchase. When the officers became concerned that other persons who later left the house would discover that their companion had been arrested, they entered the house to prevent the destruction of evidence. A warrant had previously been sent for, but had not yet arrived. The court concluded that under the circumstances "the officers had probable cause to believe that it was necessary to make the warrantless entry to prevent the destruction of evidence." *Id.* at 142, 278 S.E.2d at 846.

In *Verez* v. *Commonwealth*, 230 Va. 405, 337 S.E.2d 749 (1985), the court again upheld a warrantless entry on the basis of exigent circumstances. The court prefaced its application of the rule with the comment that "warrantless entries into dwellings, followed by searches, seizures, and arrests therein . . . are presumed to be unreasonable, in Fourth Amendment terms, casting upon the police a heavy burden of proving justification by exigent circumstances." *Id.* at 410, 337 S.E.2d at 753.

■ The following ten circumstances were identified by the court as relevant to the question whether exigent circumstances justify a warrantless entry:

(1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility

of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious, or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

*Id.* at 410-11, 337 S.E.2d at 753.

The warrantless entry of a motel room in *Verez* was supported by evidence that law enforcement officers monitoring a controlled drug purchase were "confronted with a volatile, unpredictable situation." *Id.* at 411, 337 S.E.2d at 753. At the time of their entry, the officers knew that the target of their surveillance was in possession of contraband, had reason to believe that he was armed and dangerous, and were concerned for the safety of two informants who were inside the room. *Id.*

In contrast to *Keeter* and *Verez*, the facts of the present case fall far short of establishing exigent circumstances. At the suppression hearing, Officer Hall pointed to no specific facts from which he could reasonably have concluded that either he or anyone else was in danger. When Hall entered the trailer, Walls had already been handcuffed and was being led away. Hall stated that he then "went up on the porch to see who was inside, if anybody." He further testified: "[W]e had information that a girlfriend and children were living there." From outside the door, Hall could see Fox. He offered the following description of what happened next: "She (Fox) had on nightclothes, the best I can remember. I walked in the door and told her that we had arrested Charles (Walls)."

There was nothing inherently dangerous in this situation. Fox and her children were not suspected of criminal activity, nor was there reason to believe that they were armed and dangerous. In addition, the crime being investigated was a non-violent one, and unlike *Keeter*, there was no concern of interference by accomplices. Further, Walls was under arrest, handcuffed, and being

quietly led away when Hall went into the trailer. Unlike *Verez*, therefore, there was no reason to believe that the arrest itself would trigger violence.

The Commonwealth notes that the entry took place immediately following Walls' arrest on the porch. However, the Supreme Court in *Vale* v. *Louisiana*, 399 U.S. 30, 35 (1970) declined to hold that an arrest outside the home "can provide its own 'exigent circumstances' so as to justify a warrantless search of the arrestee's house." The Court further stated: "If a search of a house is to be upheld as incident to an arrest, that arrest must take place *inside* the house, . . . not somewhere outside - whether two blocks away, twenty feet away, or on the sidewalk near the front steps." *Id.* at 33-34. (citations omitted).[4]

■ The Commonwealth also seeks to justify the entry on the grounds that the arresting officers had a right to determine whether anyone was in the trailer. While there is an exception to the warrant requirement allowing police officers to enter a building in response to a dangerous situation or an emergency, the scope of this exception is not so broad as to encompass the innocuous situation presented here. In *United States* v. *Whitten*, 706 F.2d 1000 (9th Cir. 1983), the court stated:

> [A] protective sweep of a building without a warrant may be justified by exigent circumstances if the officers reasonably believe that there might be other persons on the premises who could pose a danger to them. . . . However, to excuse this departure from the usual requirement of a warrant, the executing officers must be able to 'point to specific and articulable facts' supporting their belief that other dangerous persons may be in the building or elsewhere on the premises.

*Id.* at 1014 (citations omitted). As previously noted, there was no evidence here that there were dangerous persons in the trailer.

Finally, the Commonwealth has argued that the officers were entitled to enter the trailer in order to secure it while a search

---

[4] While the Commonwealth may argue that *Vale* involved a warrantless search whereas the present case involves a consensual search, the focus of the *Vale* analysis was whether the officers had sufficient cause to enter the defendant's home without a warrant. We find that *Vale* is relevant, therefore, to the extent that the Commonwealth attempts to justify the officers' entry on the grounds that it took place immediately following the arrest.

warrant was being obtained. Such a right would exist, however, only if the officers had probable cause to believe that their immediate entry was necessary to prevent the destruction of evidence. *Keeter*, 222 Va. at 141, 278 S.E.2d at 845. There is no evidence to support such a conclusion here. In fact, at the suppression hearing, the Commonwealth did not attempt to establish this as a basis for Officer Hall's entry. We find, therefore, that this contention is without merit.

In summary, we find that the Commonwealth has failed to establish a consensual entry or any other recognized exception allowing Officer Hall to cross, without a warrant, the "firm line at the entrance to the house." *Payton*, 445 U.S. at 590. The entry, therefore, was in violation of the Fourth Amendment.

### III.  *THIRD PARTY CONSENT*

We must next consider whether Fox possessed sufficient authority to consent to a search of the trailer. If she lacked such authority, the Commonwealth may not rely on her consent as a cure for the illegal entry. The trial court held that Fox had authority to consent, and we agree.

Under *United States* v. *Matlock*, 415 U.S. 164 (1974), "when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises." *Id.* at 171. In finding common authority, courts must look beyond mere property interests to the "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right." 415 U.S. at 171 n.7.

Here, it was established that Fox, along with her children, were living in the trailer. Officer Hall found that the children were asleep inside and found Fox dressed in a nightgown. Fox admitted that she had been staying in the trailer, but said that it was only on a temporary basis. The landlady, however, testified that she had been told that Walls would be living in the trailer with his wife and children. Personal belongings of Fox and her children

were observed by the officers in the trailer, further negating the possibility that Fox was nothing more than a temporary guest. Based on these facts, we cannot say that the trial court's finding regarding Fox's authority to consent was plainly wrong or without evidence to support it. Code § 8.01-680.

In addition, we reject Walls' argument that since he was still in the vicinity at the time Fox consented, her consent was not sufficient. Walls bases this argument on language found in *Matlock* and quoted by the Virginia Supreme Court in *Black v. Commonwealth*, 223 Va. 277, 288 S.E.2d 449 (1982). There, it was stated: "[C]onsent to search given by one with common authority over property is valid as against the *absent non-consenting* person with whom the authority is shared." *Id.* at 283, 288 S.E.2d at 452 (citing *Matlock*, 415 U.S. at 170)(emphasis added). Although this language appears in *Matlock*, it was not included as part of the holding, but only as a reference to prior case law. Nothing in the holdings of *Matlock* or *Black* suggests that the validity of a third party consent is dependent upon the absence of the defendant.

We need not decide whether it would make a difference had Walls specifically refused the police entry because that situation is not presented here. We hold only that where the defendant is present and not objecting, the police are not thereby prevented from relying on a consent to search given by a third party with sufficient authority.

## IV. *EXCLUSIONARY RULE*

Having determined that the initial entry into Walls' trailer was made in violation of the Fourth Amendment, and that Fox possessed sufficient authority to consent to the subsequent search, we must next determine whether the consent obtained was the product of the illegal entry. If it was, it would be thereby rendered invalid as a "fruit of the poisonous tree." It is well settled that under the exclusionary rule evidence obtained in violation of the Fourth Amendment may not be used against an accused. *Hart v. Commonwealth*, 221 Va. 283, 287, 269 S.E.2d 806, 809 (1980); *Lugar v. Commonwealth*, 214 Va. 609, 611, 202 S.E.2d 894, 897 (1974). "The exclusionary rule operates not only against evidence seized and information acquired during an unlawful search or

seizure but also against derivative evidence discovered because of the unlawful act." *Warlick v. Commonwealth*, 215 Va. 263, 265, 208 S.E.2d 746, 748 (1974).

In *Wong Sun*, however, the Supreme Court acknowledged that not all evidence need be suppressed "simply because it would not have come to light but for the illegal actions of the police." 371 U.S. at 488. The Court stated that "the more apt question . . . is 'whether granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id.* (quoting Maguire, *Evidence of Guilt* 221 (1959)).

It has further been recognized that "there are three limitations to the 'fruit of the poisonous tree' doctrine, namely: (1) evidence attributed to an independent source; (2) evidence where the connection has become so attenuated as to dissipate the taint; and (3) evidence which inevitably would have been gained even without the unlawful action." *Warlick*, 215 Va. at 266, 208 S.E.2d at 748.

In the present case, the Commonwealth argues that Fox's consent purged the taint of the illegal entry and provided the police with the authority they needed to conduct a warrantless search of the trailer. It also argues that even if Fox's consent is deemed invalid, the evidence would inevitably have been discovered since Walls admitted that he would have consented to a search of his trailer had he been asked. Finally, the Commonwealth argues that the evidence should not be suppressed since the police acted in a good faith belief that their entry and search were in compliance with law. We find that none of these arguments are applicable under the facts presented here.

It is true that consent obviates the need for a warrant. *United States v. Morrow*, 731 F.2d 233, 235 (4th Cir. 1984). In the present case, however, the consent was not obtained until after the illegal entry. Under these circumstances, the consent itself was a fruit of the poisonous tree unless the Commonwealth can show that it was obtained through an independent act of free will, rather than by means of the illegal entry. *State v. Taylor*, 468 So. 2d 617, 626 (La. App. 1985); *United States v. Gooding*, 695 F.2d 78, 84 (4th Cir. 1982); *People v. Mullaney*, 104 Mich. App. 787,

306 N.W.2d 347, 349 (1981).

In order to resolve this question, we must determine whether the causal chain between police misconduct and statements made subsequent thereto was broken.[5] In *Brown* v. *Illinois*, 422 U.S. 590 (1975), the Supreme Court set out factors to be considered in resolving this issue.[6] The Court stated that voluntariness of the statement is a threshold requirement. Other relevant factors are the temporal proximity of the two events, the presence of intervening circumstances, the purpose and flagrancy of the official misconduct, and the declarant's knowledge of his rights. Finally, the court noted, the burden of showing admissibility falls on the prosecution. *Id.* at 603-04.

The first question is, therefore, whether the Commonwealth has carried its threshold burden of demonstrating that Fox's consent was made voluntarily. This, again, requires application of the totality of the circumstances test established in *Schneckloth*.

Reviewing the facts in the light most favorable to the Commonwealth, we find that Fox's consent was voluntarily given. There was no evidence of deception or of duress, such as drawn weapons, threats or use of force. Fox was not under arrest and although it does not appear that she was advised of her right to withhold consent "the government need not establish such knowledge as the *sine qua non* of an effective consent." *Schneckloth*, 412 U.S. at 227.

---

[5] *State* v. *Taylor*, 468 So. 2d 617, 627 (La. App. 1985); *United States* v. *Gooding*, 695 F.2d 78, 84 (4th Cir. 1982); *United States* v. *Taheri*, 648 F.2d 598, 601 (9th Cir. 1981).

[6] The *Brown* decision involved the admissibility of a confession following an illegal arrest. While there are obvious factual distinctions between a confession following an illegal arrest and a consent to search following an illegal entry into a dwelling, these distinctions are not so significant as to render the *Brown* mode of analysis inapplicable. In both situations, the government seeks to use a statement obtained following a violation of the Fourth Amendment rights of the person making the statement. In both situations, the prior illegal activity was used to enhance the government's ability to obtain the statements. In both situations, the statements themselves may have been "voluntarily" given and thus, standing alone, usable in the absence of the prior illegal activity. Finally, in both situations, the issue is whether "granting establishment of the primary illegality" the statements to which objection is made have "been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488. For these reasons, we find that the Brown mode of analysis is appropriate to the resolution of the issue whether a consent to search is valid if obtained following an illegal entry into the consenter's dwelling.

The fact that the consent was voluntary, however, does not mean that it was "sufficiently an act of free will to purge the primary taint." *Brown*, 422 U.S. at 602 (quoting *Wong Sun*, 371 U.S. at 486). We must also consider the other factors set forth in *Brown*. One such factor is whether *Miranda* warnings preceded the contested statement. Although the present case does not involve the need for *Miranda* warnings, we must consider whether Fox was aware of her right to withhold consent in order to assess the level of attenuation between the entry and the consent. *State v. Taylor*, 468 So. 2d at 627.

According to Officer Hall, he first obtained a verbal consent from Fox and then wrote out a consent for her signature. The written consent, which Fox acknowledged signing, states: "I Joyce Fox give the Caroline Co. Sheriff's Dept. and Va. State Police permission to search my trailer and also give permission for them to seize any items they feel may be stolen." It does not appear from this or from any of the testimony that Fox was ever informed of her right to withhold consent. While this factor, alone, does not require suppression of the consent, it does nothing to separate the consent from the entry.[7]

Two other factors we consider are temporal proximity and the presence of intervening circumstances between the entry and the consent. Officer Hall described the events as follows: "I walked inside the door and told her (Fox) that we had arrested Charles (Walls) for burglary in Caroline County. I told her who I was and that we were investigating a series of burglaries in the County, and that I would like to have permission to search the trailer." From this, it is apparent that the consent followed the entry without any significant passage of time. The only intervening circumstance was that by the time Fox signed the consent, four more officers had entered the trailer. These factors, therefore, also fail to establish a break in the causal connection.[8]

---

[7] In *Taylor*, one factor favoring a finding of free will on the part of the consenter was the wording of the consent which stated: "I, Betty Sue Taylor, having been informed of my constitutional right not to have a search made of the premises . . . without a search warrant and of my absolute right to refuse to consent to such a search. . . ." 468 So.2d at 627.

[8] Significantly longer periods of time have been found insufficient to establish a break in the causal connection between the act of misconduct and the resulting statements. *See Taylor* v. *Alabama*, 457 U.S. 687, 691 (1982)(six hours between illegal arrest and confes-

The final consideration under *Brown* is the purpose and flagrancy of the official misconduct. As stated in *Taylor*: "[T]he issue is, considering the purpose and flagrancy of the illegality, whether there is a close causal connection between the official misconduct and the subsequent consent." 468 So. 2d at 628. The official misconduct here was not flagrant. The officers should have known that they needed a warrant, or some manifestation of consent beyond failure of the occupants to object, before entering the trailer. However, they did not force their way into the trailer or ignore requests that they leave. We must, however, weigh these facts against the nature of the violation. As stated in *Welsh*: "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." 466 U.S. at 748.

Based on the facts presented before us, it appears that the very purpose of the entry was to obtain Fox's consent. Officer Hall knew that Fox was inside the trailer before he entered. He did not enter in response to a perceived danger or because he thought Fox was about to destroy evidence. Although he never stated exactly why he did enter the trailer, it is undisputed that immediately upon his entry he made known to Fox his desire to search. It cannot be said, therefore, that the misconduct, though not flagrant, was unrelated to the consent.

Having reviewed all the factors given by the Supreme Court in Brown, we conclude that Fox's consent, even if voluntary, was not sufficiently attenuated from the warrantless entry so as to "purge the taint" of that event.

We next address the Commonwealth's argument that the evidence should not have been suppressed because it would inevitably have been discovered. Inevitable discovery has long been recognized in Virginia as an exception to the exclusionary rule. *Keeter*, 222 Va. at 140 n.2, 278 S.E.2d at 845 n.2; *Warlick*, 215 Va. at 265, 208 S.E.2d at 748. The United States Supreme Court approved this exception in *Nix* v. *Williams*, 467 U.S. 431 (1984). There, the Court held that evidence may be admitted under this theory if the prosecution can establish by a preponderance of the evidence that it would ultimately or inevitably have been discovered. *Id.* at 444.

---

sion); *Brown*, 422 U.S. at 604 (two hours between arrest and confession); *Taylor*, 468 So. 2d at 627 (one and a half hours between entry and consent).

A question that remains unanswered from these cases, however, is what must be shown in order to establish that discovery of evidence is inevitable. In *United States* v. *Cherry*, 759 F.2d 1196 (5th Cir. 1985), the court considered this question and held that application of the inevitable discovery exception requires that the prosecution show:

> (1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct, (2) that the leads making the discovery inevitable were possessed by the police at the time of the misconduct, and (3) that the police also prior to the misconduct were actively pursuing the alternative line of investigation.

759 F.2d at 1204 (citing *United States* v. *Brookins*, 614 F.2d 1037, 1042 n.2 (5th Cir. 1980)).

Regarding the need for the third requirement listed above, the court noted that "when the police have not been in active pursuit of an alternate line of investigation. . . the general application of the inevitable discovery exception would greatly encourage the police to engage in illegal conduct because (1) the police would usually be less certain that the discovery of the evidence is 'inevitable' in the absence of the illegal conduct and (2) the danger that the evidence illegally obtained may be inadmissible would be reduced." 759 F.2d at 1204-05.

This requirement further ensures that the inevitable discovery exception will be applied consistently with the overall purpose of the exclusionary rule, which is to deter police misconduct. As stated in *Cherry*: "[A] contrary result would cause the inevitable discovery exception to swallow the rule by allowing evidence otherwise tainted to be admitted merely because the police could have chosen to act differently and obtain the evidence by legal means." *Id*. at 1205.

Applying the three requirements of *Cherry*, we find that the Commonwealth has failed to establish here that they were actively pursuing an alternative line of investigation that would inevitably have led to the discovery of the evidence found in Walls' trailer. To the contrary, the record shows that the police made their entry, illegally, prior to taking any steps which would inevitably

have allowed them to do it legally.[9] Accordingly, we hold that the Commonwealth may not rely on the inevitable discovery exception under the facts presented here.

Our conclusion, in this regard, is not altered by Walls' statement at the suppression hearing that he would have consented to the search had he been asked. The fact remains that he was not asked, nor is there any evidence that the police had any intention of asking him. Therefore, Walls' unexpressed state of mind at the time of the entry is not something the Commonwealth may now rely upon.

Finally, we address the Commonwealth's argument that the evidence should not be suppressed because the police acted in a good faith belief that their entry and search were in compliance with law. As yet, no such exception to the exclusionary rule exists. The good faith exception provided for under *United States* v. *Leon*, 468 U.S. 897 (1984)[10] applies only where the police have obtained a warrant which is later found to be defective. In such situations, the police have not acted improperly and the main justification for excluding evidence (deterrence of police misconduct) would not be furthered by the suppression of evidence. Where, as here, the police act without a warrant, their actions are unprotected by reliance on prior judicial sanction and the rationale of *Leon* is inapplicable. *United States* v. *Miller*, 769 F.2d 554, 560 (9th Cir. 1985); *State* v. *Taylor*, 468 So. 2d at 625.

Having reviewed all of the Commonwealth's arguments regarding Fox's consent, we conclude that the consent was unlawfully obtained. The Commonwealth was not, therefore, entitled to rely upon it to support the warrantless search of the dwelling. *See Leake* v. *Commonwealth*, 220 Va. 937, 942, 265 S.E.2d 701, 704 (1980); *United States* v. *Cherry*, 759 F.2d at 1207; *United States* v. *Gooding*, 695 F.2d at 84; *People* v. *Mullaney*, 306 N.W.2d at

[9] In *Keeter*, the court applied the inevitable discovery exception "since the warrant . . . *was already being prepared* and would have led to the discovery of the evidence . . . even if the prior entry was unlawful." 222 Va. at 140 n.2, 278 S.E.2d at 845 n.2 (emphasis added). In *Warlick*, one reason for not suppressing the defendant's statements regarding prior drug trouble in Texas was the court's finding that they would inevitably have been discovered. It appears that contact had already been made with Texas authorities regarding the defendant prior to his making the statements. 215 Va. at 268, 208 S.E.2d at 749.

[10] Adopted by Virginia in *McCary* v. *Commonwealth*, 228 Va. 219, 232, 321 S.E.2d 637, 644 (1984).

349; *United States* v. *Taheri*, 648 F.2d at 601; *People* v. *Patrick*, 93 Ill. App. 3d 830, 833, 417 N.E.2d 1056, 1059 (1981).

The Commonwealth argues, however, that any error in the admission of items found in Walls' trailer was harmless. We disagree. Aside from the items seized during the illegal search, the Commonwealth presented evidence that Walls' fingerprints were found inside the burglarized home. In addition, the victim testified that he had never given Walls permission to be inside the house. While this proof places Walls inside the home without explanation, and may have been sufficient to sustain a conviction,[11] the question is whether it was such overwhelming proof that admission of the improperly seized items was harmless beyond a reasonable doubt. *Jones* v. *Commonwealth*, 218 Va. 732, 737, 240 S.E.2d 526, 529 (1978). We cannot say that it was since, as part of the present trial, the jury found Walls not guilty of having committed a separate burglary of the same home on the previous day.

One final point must be addressed. It appears from the record that the watch and medallion introduced at trial were found inside two locked metal boxes located under Walls' bed. The boxes were seized during the illegal search, but were not opened until Walls gave the key to Officer Hall and signed a consent-to-search form at the Caroline County Sheriff's office. In view of its conclusion that Fox's consent was valid, the trial court did not have an opportunity to consider whether Walls' consent to search the boxes was sufficiently an act of free will as to dissipate the taint of their illegal seizure. Further, the record in this regard was not developed to the point where we can make such a determination here. Among the circumstances that cannot be determined from the record are whether Walls was advised of his right to withhold consent; whether there were any intervening circumstances that would serve to mitigate the taint of the illegal entry; or the length of time that passed between the entry and Walls' consent to open the boxes. We cannot evaluate this issue without knowing more

---

[11] The rule in Virginia is that "while [a] defendant's fingerprints found at the scene of the crime may be sufficient under the circumstances to show defendant was there at *some time*, nevertheless in order to show defendant was the criminal agent, such evidence must be coupled with evidence of other circumstances tending to reasonably exclude the hypothesis that the print was impressed at a time other than that of the crime." *Turner* v. *Commonwealth*, 218 Va. 141, 146, 235 S.E.2d 357, 360 (1977).

fully what the circumstances were. In the event of a retrial, however, the Commonwealth will not be precluded from attempting to establish that Walls' consent, although given while in custody, was nevertheless an intervening act of free will, dissipating the taint of the illegal seizure of the boxes. *See United States* v. *Fike*, 449 F.2d 191, 194 (5th Cir. 1972).

In summary, we find that the warrantless entry was illegal; that Fox had authority to consent to a search of the trailer; that Fox's consent should have been suppressed as fruit of the poisonous tree; and that the improper admission of the illegally obtained evidence was not harmless. For these reasons, the conviction is reversed and remanded for a new trial, if the Commonwealth be so advised.

*Reversed and remanded.*

Koontz, C.J., concurred.

Benton, J., concurring in part and dissenting in part.

I dissent only from that portion of the opinion which holds that on remand the Commonwealth will not be precluded from attempting to establish that Walls' consent was an intervening act of free will, dissipating the taint of the illegal seizure of the boxes.

In *Segura* v. *United States*, 468 U.S. 796 (1984), the Court stated:

> [T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, *Weeks* v. *United States*, 232 U.S. 383 (1914), but also evidence later discovered and found to be derivative of an illegality or *"fruit of the poisonous tree." Nardone* v. *United States*, 308 U.S. 338, 341 (1939). It "extends as well to the indirect as the direct products" of unconstitutional conduct. *Wong Sun* v. *United States*, 371 U.S. 471, 484 (1963).
>
> Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion.

*Id.* at 804.

The locked boxes, including their contents, were discovered and seized by the deputy sheriff after an unconstitutional entry into

Walls' residence and were removed to the sheriff's office. I believe that the boxes and their contents constitute "primary evidence obtained as a direct result" of an illegal entry, an illegal search and an illegal seizure and are "plainly subject to exclusion."

The majority opinion concludes that Fox's consent to search was invalid. This conclusion means, as the majority so holds, that the search of the trailer *and* seizure of items found in the search also were unlawful. Walls was shown boxes that were seized illegally as part of the unlawful entry and search and then was requested essentially to ratify and condone all of the earlier unlawful conduct. *Segura* v. *United States* indicates that:

> [T]he question to be resolved when it is claimed that evidence subsequently obtained is "tainted" or is "fruit" of a prior illegality is whether the challenged evidence was
>
> " '*come at by exploitation of [the initial] illegality* or instead by means sufficiently distinguishable to be purged of the primary taint.' "

468 U.S. at 804-05 (citation omitted) (emphasis added). I believe the record before us compels a conclusion that the evidence to which Walls objects was "come at by exploitation of [the initial] illegality." This conclusion necessarily precludes the admission of the contested evidence.

Because there was both an illegal entry and illegal search of Walls' residence while he was detained outside and was aware of the entry and search, certainly there can be no doubt that the request made to Walls at the Sheriff's office to permit the search of the illegally seized boxes was *demonstrably* an exploitation of the illegal entry and search. The police sought a ratification, several hours after the fact, of the very illegalities they perpetrated under color of law - the illegal entry, illegal search and illegal seizure. The requested consent was an attempt to obtain a *benefit* from the initial illegal entry and search of the dwelling because the consent which the police sought was for the search of the same items seized during the illegal entry and search of the residence.

> There is no authority . . . which justifies an . . . illegal search based upon a later consent to an additional search.

*United States* v. *Melendez-Gonzalez*, 727 F.2d 407, 414 (5th Cir. 1984). The purported consent was derived directly from information gained as a result of the illegal entry, search and seizure.

In my opinion, the record fully points to an invasion of Walls' dwelling by five police officers to obtain evidence of crime with utter disregard for the legality of their conduct. It is this "quality of purposefulness" on an "expedition for evidence" that courts should not condone. *Brown* v. *Illinois*, 422 U.S. 590, 605 (1975). The purpose of the exclusionary rule is to deter unlawful police action. *Michigan* v. *DeFillippo*, 443 U.S. 31 (1979). Because "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," *United States* v. *United States District Court*, 407 U.S. 297, 313 (1972), this case properly requires application of the exclusionary rule to all evidence obtained directly or indirectly as a result of the violation.

I would rule that the trial court should exclude without further inquiry all the evidence seized from the residence during the unconstitutional entry and search.