COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Benton and Elder
Argued at Richmond, Virginia


ARTHUR LEE MONTAGUE
                                        MEMORANDUM OPINION[*] BY
v.  Record No. 2387-95-2           CHIEF JUDGE NORMAN K. MOON
                                           DECEMBER 31, 1996
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF HENRICO COUNTY
                    George F. Tidey, Judge

        Robert P. Geary for appellant.

        John K. Byrum, Jr., Assistant Attorney
        General (James S. Gilmore, III, Attorney
        General, on brief), for appellee.



     Arthur Lee Montague was convicted of possession of heroin

and appeals the trial judge's denial of his motion to suppress.

Because the evidence supports the trial judge's finding that the

evidence was lawfully obtained, we affirm the conviction.

                               I.

     The evidence proved that on September 16, 1994, Officer

Cindy Patterson was engaged in a drug interdiction operation in a

location where drug transactions were known to occur.  From a

distance of fifty yards, Officer Patterson observed Montague

approach Troy Hargrove and speak to him.  Montague and Hargrove

reached into their own pockets and exchanged something.  Officer

Patterson concluded that a drug transaction had occurred and

radioed for another officer to confront them.

_____

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Two uniformed officers on bicycles responded to Officer Patterson's call. Montague testified that the officers confronted him and Hargrove and told them to take everything out of their pockets. They put their possessions on a car. Montague also testified that the officers never asked permission to search them. The officers also frisked them. The officers then told them they could put everything back in their pockets. As Hargrove picked up his matchbook, heroin fell out. The officers then arrested Hargrove.

Officer Joseph Coker, who also responded to Officer Patterson's call, testified that as he approached he heard one of the other officers state that he had found something. Officer Coker testified that he then went to Montague and informed him that they were looking for drugs or guns. Officer Coker further testified that when he asked Montague whether he had drugs or guns, Montague responded that he did not and added that he had already been searched by the officers on bicycles.

When one of the officers verified that he had already checked Montague, Officer Coker asked the officer if he could check Montague again. Officer Coker testified that he asked Montague if he would mind being searched again. Coker testified that Montague said "no" and thrust his arms up into the air. Montague, however, testified that Officer Coker did not ask for permission to search him.

Officer Coker frisked Montague and saw a matchbox with

pieces of plastic and aluminum foil in the watch pocket of Montague's pants. Officer Coker testified that he knew, based on his training and experience, that heroin was packaged in squares of foil and often carried in a person's watch pocket. He seized the matchbox and arrested Montague. The laboratory reported that the box contained heroin.

## II.

Montague contends that the Commonwealth failed to prove that he validly consented to the search performed by Officer Coker and that the seizure and search were illegal. We disagree.

"On review, we consider the [evidence] in the light most favorable to the [Commonwealth], granting to it all reasonable inferences fairly deducible therefrom." Commonwealth v. Ealy, 12 Va. App. 744, 747, 407 S.E.2d 681, 683 (1991). So viewed, Officer Coker testified that he approached Montague and said, "Okay, do you mind if I search again?" In response, Montague said, "No," and threw his arms up. This testimony was sufficient to prove that Montague consented to the search by Officer Coker.

Even though Montague did voluntarily consent to the search by Officer Coker, the evidence would still be inadmissible if it was "acquired as an indirect result of [an earlier] unlawful search." Id. at 754, 407 S.E.2d at 687 (quoting Murray v. United States, 487 U.S. 533, 536-37 (1988)). Montague argues that the initial search performed by the officers on bicycles was unlawful. Assuming arguendo that the first search was unlawful,

an issue we need not decide today, we hold that the evidence obtained from the subsequent search by Officer Coker was nevertheless admissible because it was "not obtained by exploitation of the [allegedly] unlawful search." Ealy, 12 Va. App. at 755, 407 S.E.2d at 688.

"[A] . . . consent to search obtained subsequent to an unlawful search may be an independent source if such . . . consent is not obtained by exploitation of the unlawful search." Id. "[E]vidence is not 'fruit of the poisonous tree' simply because 'but for' an unlawful search it would not have come to light." Id. (citing Segura v. United States, 468 U.S. 796, 815 (1984)). The allegedly unlawful search of Montague provided Officer Coker with no additional information to use in seeking or conducting the second search. Indeed, nothing incriminating was found on Montague during the first search. Thus, this case is distinguishable from Hall v. Commonwealth, 22 Va. App. 226, 468 S.E.2d 693 (1996), where the police did find incriminating evidence on the defendant before obtaining his consent to a further search.

Montague himself testified that, before Officer Coker approached him, Montague had already been told that he could retrieve his belongings from the hood of the car. This testimony established that Montague had been released from the first search and his continued presence at the scene was his own independent act. The evidence supported a finding that the subsequent search

- 4 -

was "the product of a free will that purge[d] the taint of an[y] illegality."  <u>Ealy</u>, 12 Va. App. at 756, 407 S.E.2d at 688.  We therefore hold that Montague validly consented to the second search and the heroin found was not tainted by any alleged prior illegality.  Accordingly, the trial judge did not err in admitting the evidence.

<u>Affirmed</u>.

Benton, J., dissenting.

The evidence proved that the initial search of Montague was unlawful. Because Montague's consent to the second search was obtained "by exploitation of [the prior] unlawful search," Commonwealth v. Ealy, 12 Va. App. 744, 755, 407 S.E.2d 681, 688 (1991), I would hold that the evidence was inadmissible.

The evidence proved that from a distance of fifty yards, Officer Patterson saw Arthur Lee Montague and Troy Hargrove meet on the street with their bicycles. The sunlight was still present. The men spoke briefly, reached into their pockets, and exchanged something. Although Officer Patterson could not see what was exchanged, she called other officers to stop and search the men because she "believed . . . [it was] a drug transaction."

The evidence proved that two officers confronted Montague and Hargrove and searched them. Neither of the officers who searched the men testified. However, Montague testified that the two officers approached him and Hargrove, told them to remove everything from their pockets, and then frisked them. He further testified that the officers did not ask permission for the search.

Based upon this Court's prior holdings in Riley v. Commonwealth, 13 Va. App. 494, 497, 412 S.E.2d 724, 726 (1992); Smith v. Commonwealth, 12 Va. App. 1100, 1104, 407 S.E.2d 49, 52 (1991); Goodwin v. Commonwealth, 11 Va. App. 363, 367, 398 S.E.2d 690, 692 (1990); Moss v. Commonwealth, 7 Va. App. 305, 308, 373

S.E.2d 170, 172 (1988), I would hold that this initial detention and search were illegal. "The officer's own testimony revealed that [s]he could not tell what was in the defendant's hand and that the stop was based more on the officer's '"inchoate and unparticularized suspicion or 'hunch'" . . . than on a reasonable suspicion based on objective facts.'" Goodwin, 11 Va. App. at 366-67, 398 S.E.2d at 692.

This initial illegal search tainted the second search. The evidence proved that after the initial search was unfruitful, the two officers told Montague and Hargrove that they could retrieve their belongings. When Hargrove began to do so, a package of heroin fell out of a matchbook that he was putting in his pocket. The officers then arrested Hargrove. As Hargrove was being arrested, Officer Coker arrived and confronted Montague.

The majority asserts that Montague's continued presence at the scene was his own independent act. However, the evidence proved that Officer Coker observed Montague looking around as if he was seeking an avenue to "escape." Officer Coker approached Montague, just moments after Montague retrieved his belongings, to prevent Montague from leaving. Therefore, the Commonwealth's own evidence reveals that Montague's continued presence at the scene was caused by Coker's decision to intervene.

"It is well settled that the burden is on the Commonwealth to establish an exception to the warrant requirement." Walls v. Commonwealth, 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986).

"When trying to establish that there was a voluntary consent after an illegal stop, the [Commonwealth] has a much heavier burden to carry than when the consent is given after a permissible stop." United States v. Ballard, 573 F.2d 913, 916 (5th Cir. 1978). "Th[e] burden [to prove consent] cannot be discharged by showing no more than acquiescence to a claim of lawful authority." Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968) (footnote omitted). In discharging its burden, the Commonwealth must establish that the claimed voluntary act, the alleged consent, was "sufficiently an act of free will to purge the primary taint" of the illegal seizure. Wong Sun v. United States, 371 U.S. 471, 486 (1963).

The record in this case fails to establish and, indeed, could not establish that the consent was free from the taint of the illegal seizure. In determining whether a consent was "sufficiently attenuated from the [illegal search] to purge its taint," this Court has "considered, in addition to the voluntariness of the consent, the temporal proximity and the presence of intervening circumstances between the [illegality] and the consent, [the defendant's] awareness of a right to withhold consent, and the purpose and flagrancy of the police misconduct." Ealy, 12 Va. App. at 755, 407 S.E.2d at 688.

Although the Commonwealth argues that Montague freely consented, the officer's request for consent occurred just moments after the prior unlawful search. No intervening

circumstances existed that would break the chain of events. <u>See</u> <u>Walls</u>, 2 Va. App. at 654, 347 S.E.2d at 184. Minutes after retrieving his belongings, and before Montague had a chance to walk away, Officer Coker confronted him and asked permission to search. The evidence reveals that the searches occurred during one continuing interaction between Montague and the police. The temporal proximity of the illegal search and the "consent," and the lack of intervening circumstances, together lead to the conclusion that the causal connection between the illegal seizure and the alleged "consent" remained unbroken.

Finally, the police misconduct in performing the illegal search was directly related to Montague's consent to the second search. <u>See</u> <u>Walls</u>, 2 Va. App. at 655, 347 S.E.2d at 184. The Commonwealth's evidence does not negate the reasonable conclusion that Montague probably consented to Officer Coker's search because he had not been given a choice when the initial search was performed.

For these reasons, I would hold that the evidence failed to prove that Montague's presence and consent to the second search was his own voluntary, independent act.