COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Overton
Argued at Richmond, Virginia


RAHEEM SHABAZZ ALLAH
                                      MEMORANDUM OPINION[*] BY
v.  Record No. 2180-95-2           JUDGE JAMES W. BENTON, JR.
                                        JANUARY 28, 1997
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                   Walter W. Stout, III, Judge

            Cullen D. Seltzer, Assistant Public Defender
            (David J. Johnson, Public Defender, on
            briefs), for appellant.

            Eugene Murphy, Assistant Attorney General
            (James S. Gilmore, III, Attorney General, on
            brief), for appellee.


        Raheem Shabazz Allah was indicted on the charges of

possession of cocaine with intent to distribute, see Code

§ 18.2-248, and transportation of cocaine into the Commonwealth

with intent to distribute.  See Code § 18.2-248.01.  The trial

judge denied Allah's motion to suppress the cocaine and convicted

Allah of both charges after Allah entered a conditional guilty

plea preserving his right to appeal.  In this appeal, Allah

argues that he was unlawfully searched.  Because the evidence did

not prove the lawfulness of the search, we reverse the trial

judge's decision.

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

FACTS

The evidence proved that on March 22, 1995, Officer Armistead and Detective Ruffin were assigned to a narcotics interdiction team that was working at the Greyhound bus terminal in Richmond. They observed Allah arrive at the terminal in an automobile driven by another man. Allah and the man went to the ticket counter and obtained a ticket. Allah, who was not carrying luggage, then boarded a bus travelling to New York City. A full twenty-four hours later, at 3:15 a.m. on the following day, Allah returned to Richmond wearing the same clothes and still carrying no luggage. Allah went from the bus into the terminal and made a telephone call. After placing a telephone call, Allah played video games.

Detective Ruffin approached Allah, displayed her badge, and asked if she could speak with him. Officer Armistead testified that he stood outside the game room. Detective Ruffin asked Allah if Officer Armistead could search him. Allah refused to be searched and asked why Detective Ruffin needed to speak with him. Detective Ruffin stated that she was in the terminal to stop the flow of illegal narcotics, told Allah about their observations of him, and told Allah that his actions had made the police suspicious. Detective Ruffin then again asked Allah if he would allow Officer Armistead to search him. Allah asked why she wanted to search him and stated that he did not want to be searched. Detective Ruffin testified that the encounter was not

consensual.

Detective Ruffin advised Allah that they would detain him until they obtained a search warrant.  Detective Ruffin took Allah to a customer service office where Officer Armistead detained him.

Detective Ruffin left the terminal to seek a warrant.  While she was typing the application, she spoke to a Commonwealth's Attorney.  Based on their conversation, Detective Ruffin concluded that she did not have sufficient grounds to obtain a warrant.  Detective Ruffin talked to Officer Armistead on the telephone and learned that Officer Armistead had unsuccessfully attempted to get a drug dog and a criminal record check of Allah.

Officer Armistead said that he told Allah about their efforts to obtain a warrant, drug dog, and a criminal record check.  He also testified that while he was detaining Allah in the office, he saw the man, who had brought Allah to the terminal the day before, enter the terminal.

After Detective Ruffin notified Officer Armistead that she was unable to get a search warrant, Officer Armistead told Allah to accompany him.  He walked Allah outside the terminal near Gates 6 and 7.  Officer Armistead testified that he then told Allah he was no longer being detained.  Officer Armistead then asked, however, "do you mind if I continue talking."  He said Allah "agreed by shaking his head up and down."  Officer Armistead testified that he advised Allah of the reasons for his

suspicion and explained why they detained him. He said Allah stated, "it sounds like probable cause to me."

Officer Armistead then asked Allah whether he was carrying any illegal drugs. Officer Armistead testified that he then "told [Allah], I just want to ask you again, can I search your person for drugs, and by that I mean, just want to squeeze your pockets from the outside." Allah began taking items out of his pockets. However, Armistead stated "don't pull anything out of your pockets" and said that he only wanted to feel the outside of Allah's pockets. He testified that Allah said, "go ahead."

Officer Armistead felt a long oval object in Allah's upper breast area, and when he squeezed the object, he discovered that it was irregularly shaped and "crunchy." Officer Armistead then told Allah that he was under detention again. He said that he told Allah that the object "feels consistent to . . . crack cocaine." Officer Armistead then took Allah back to the service office. Officer Armistead testified that after they entered the office, Allah attempted to run when Armistead turned to look for Detective Ruffin. The officers stopped Allah and searched him. They removed the object from Allah's pocket, opened it, and saw what was later tested to be cocaine. The officers arrested Allah at 5:03 a.m.

The trial judge concluded that Allah's "acceptance of the search was voluntary" and overruled Allah's suppression motion. For the reasons that follow, we hold that Allah was unlawfully

- 4 -

detained and that the search was tainted by the illegal detention.

THE DETENTION

Officer Armistead testified that "the reason [Allah] was detained was that he was observed coming into the [bus] terminal with a heavyset, light complected male, having no luggage, getting on the bus, going to New York and then coming back on a quick turnaround." Because these "circumstances describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure," Reid v. Georgia, 448 U.S. 438, 441 (1980), we hold that the officers lacked a reasonable suspicion "that criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968). Therefore, the detention of Allah while the police attempted to find a search warrant was unlawful. See Reid, 448 U.S. at 441.

THE SEARCH

When the police search a person without a search warrant, "the burden is on the Commonwealth to establish an exception to the warrant requirement." Walls v. Commonwealth, 2 Va. App. 639, 645, 347 S.E.2d 175, 178 (1986). "When trying to establish that there was a voluntary consent after an illegal stop, the [Commonwealth] has a much heavier burden to carry than when the consent is given after a permissible stop." United States v. Ballard, 573 F.2d 913, 916 (5th Cir. 1978). Even if the Commonwealth discharges its heavy burden to prove a voluntary consent, the Commonwealth then must establish that the consent

was "sufficiently an act of free will to purge the primary taint" of the illegal seizure. Wong Sun v. United States, 371 U.S. 471, 486 (1963). "The fact that the consent was voluntary . . . does not mean that it was sufficiently an act of free will to purge the primary [illegal] taint." Walls v. Commonwealth, 2 Va. App. 639, 654, 347 S.E.2d 175, 183 (1986).

Because we hold that the evidence proved that the illegal detention tainted the alleged consent to search, we assume, without deciding, that the consent was voluntary. The principle is well established by this Court that evidence must be suppressed if it was "obtained pursuant to . . . [a] voluntary consent to search [that] was '"come at by exploitation of [the initial] illegality" rather than "by means sufficiently distinguishable to be purged of the primary taint."'" Commonwealth v. Ealy, 12 Va. App. 744, 757, 407 S.E.2d 681, 689 (1991) (citations omitted). In determining whether a consent was "sufficiently attenuated from the [illegal detention] to purge its taint," this Court has "considered, in addition to the voluntariness of the consent, the temporal proximity and the presence of intervening circumstances between the [illegality] and the consent, [the defendant's] awareness of a right to withhold consent, and the purpose and flagrancy of the police misconduct." Id. at 755, 407 S.E.2d at 688.

The evidence shows that the consent was given shortly after the illegal detention ended. Allah was detained for a period of

forty-five minutes to an hour while the officers sought a search warrant. After Officer Armistead notified Allah that he was "no longer under detention," Officer Armistead continued his investigation by continuing to speak with Allah. He obtained Allah's consent to the search in that conversation. Thus, no intervening circumstances occurred that would break the chain of events. See Walls, 2 Va. App. at 654, 347 S.E.2d at 184.

The police misconduct in unlawfully detaining Allah was directly related to the ensuing conduct. See id. at 655, 347 S.E.2d at 184. Officer Armistead testified that after he was denied a warrant, he wanted to extract Allah's consent. Officer Armistead's objective to search Allah was clearly manifested by his testimony that "I wanted to receive his consent and I believe Detective Ruffin wanted to receive his consent also."

Although Officer Armistead had earlier told Allah that they were seeking a search warrant and a drug dog, the record does not indicate that he told Allah that they had been unable to procure either. Officer Armistead sought to keep Allah at the terminal by talking to him and by conveying the facts that formed the basis for the officers' suspicions. However, Armistead testified that the reason why he informed Allah of the grounds for his suspicions was "[j]ust to advise him of that."

After Allah had been detained for up to one hour, Officer Armistead was still confronting him and describing the circumstances that arose Armistead's suspicions. Allah now was

aware, however, that his earlier refusal to allow a search resulted in a lengthy detention. The Commonwealth's evidence therefore does not negate the reasonable conclusion that Allah consented to the search just to free himself from police interference. Certainly, the evidence proved that the police exploited the initial illegal detention to provoke a consent.

Because the evidence proved that the consent was tainted by the illegal detention, the trial judge erred in denying Allah's motion to suppress. Therefore, we reverse the trial judge's refusal to suppress the evidence and set aside the convictions.

<u>Reversed and remanded</u>.