## CIRCUIT COURT OF THE CITY OF NORFOLK

Commonwealth of Virginia

v.

Soy Hem

September 11, 2003

Case No. (Criminal) CR03002487

BY JUDGE MARC JACOBSON

Defendant Soy Hem has filed a Motion to Suppress on the grounds that the evidence sought to be suppressed "was obtained in violation of the provisions of the Fourth, Fifth, or Sixth Amendments to the Constitution of the United States, or Article One, Sections Eight, Ten, or Eleven of the Constitution of Virginia, describing illegal searches and seizures and protecting rights against self-incrimination, as well as pursuant to § 19.2-266.2 of the Code of Virginia, as amended." (*See* Mot. to Sup.)

Investigators Dickason and Curott of the Norfolk Police Department received intelligence regarding an alleged methamphetamine business located at a business known as D. J. & S. Autos (DJS) located on Kempsville Road in the City of Norfolk and, based on such intelligence, went to the location on April 3, 2003, at approximately 5:00 p.m., with no search warrant. (Tr. at 7–8, 30.) When Dickason and Curott entered the business location of DJS, they spoke with the receptionist, Jennifer Renne Lowe, (Tr. at 8) and Dickason asked if Lowe knew the whereabouts of either Steven Hall or Defendant. After Lowe responded that she did not, Dickason inquired about a door marked "employees only," located to the right of the reception area, which led to an employee break room. (Tr. at 8, 28.) Lowe walked over to check the door, and it was locked. Lowe then walked out to the bay area and entered the room through a different door and then came out of the locked door. (Tr. at 8–9.)

When Lowe came out of the door, Defendant was in the break room changing clothes. (Tr. at 47–58, 65–66.) Dickason identified himself as an investigator and showed Defendant his badge and identification. Dickason informed Defendant that he was there on a narcotics investigation for methamphetamine. (Tr. at 11–12.) It is disputed at what point Dickason entered the break room. The defense asserts that Dickason entered the room immediately after it was opened by Lowe and that he did not obtain consent to search Defendant until after he (Dickason) was in the room. (Tr. at 48, 65–66.) The Commonwealth contends that Dickason obtained consent to search Defendant before entering the room. (Tr. at 36–37.)

As Dickason was patting down Defendant in the break room, he noticed a box that contained a plastic Ziploc bag with white residue. Dickason placed Defendant in handcuffs and detained him. After Defendant was detained, Dickason looked around and found in plain view several glass pipes. (Tr. at 17.)

Initially, inquiry must be made as to whether or not Defendant had a reasonable expectation of privacy in the employee break room at his place of business, DJS. The Fourth Amendment prohibits warrantless searches in any place where a person has a reasonable expectation of privacy. *Katz v. United States*, 389 U.S. 347 (1967). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. ... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Id.* at 352. Investigator Dickason did not have a search warrant when he entered DJS. "It is well settled that the burden is on the Commonwealth to establish an exception to the warrant requirement" when a warrantless search is conducted. *Walls v. Commonwealth*, 2 Va. App. 649, 645, 347 S.E.2d 175, 178 (1986); *see United States v. Jeffers*, 342 U.S. 48, 51 (1951).

A person does not have a reasonable expectation of privacy in an area that the public can observe by being lawfully present. *Shaver v. Commonwealth*, 30 Va. App. 789, 795–96, 520 S.E.2d 393, 396 (1999). However, the evidence would indicate that the break room was not generally observable by the public. The door had a sign that said "employees only," it was locked at the time Investigators Dickason and Curott arrived, at least when Dickason was present on the premises, and the room was used by employees to change clothes.

In the case of *Mancusi v. DeForte*, 392 U.S. 364 (1968), the United States Supreme Court held that the sharing of a business office does not destroy an employee's expectation of privacy. In *Mancusi*, the defendant was a teamster official. State law enforcement was investigating a union office and seeking

union records. The police searched DeForte's office, which "consisted of one large room, which he shared with several other union officials." *Id.* at 369. The Court recognized that the fact that DeForte shared an office with other employees did not fundamentally change his expectation of privacy. The Court stated that "DeForte still could reasonably have expected that only those persons and their personal or business guests would enter the office and that records would not be touched except with their permission. … This expectation was inevitably defeated by the entrance of state officials." *Id.*

In the instant case, in effect, Defendant argues that the break room was locked and not open to the public and that Defendant had a reasonable expectation that only employees (and possibly their guests) would enter the break room and that the contents of the room would remain untouched without their permission, despite the room's being accessible to multiple employees, without benefit of a search warrant.

If Defendant did have a reasonable expectation of privacy in the break room, the Court must consider whether Defendant validly consented to the search, and, if Defendant's consent to search was valid, the Commonwealth could argue that the "plain-view doctrine" would apply and the seizure of the evidence would be lawful.

The Commonwealth asserts that Dickason did not enter the break room until after he had received consent to search Defendant (Tr. at 36–37); however, Defendant alleges that Dickason entered the break room before obtaining consent. (Tr. at 48, 65–66.) If Dickason entered the break room after obtaining consent to search Defendant, the search would be valid and any contraband in Dickason's plain view would be seizable. "The plain-view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *Illinois v. Andreas*, 436 U.S. 765, 771 (1983) (citing *Texas v. Brown*, 460 U.S. 748, 749–50 (1983) (plurality opinion)).

However, if Dickason entered the break room before obtaining consent, the "consent itself [is] a fruit of the poisonous tree unless the Commonwealth can show that it was obtained through an independent act of free will, rather than by means of the illegal entry." *Walls v. Commonwealth*, 2 Va. App. 639, 652, 347 S.E.2d 175, 182–83 (1986). In order to determine if the consent was obtained by free will, the Court should examine the following factors: "(1) the voluntariness of the consent, (2) the temporal proximity of the illegal entry to the consent, (3) the presence of intervening circumstances, (4) the purpose and

flagrancy of the police misconduct, and (5) the 'declarant's' knowledge of the right to withhold consent." *Douglass v. Commonwealth,* 1997 Va. App. LEXIS 532, at *14 (Aug. 5, 1997) (unpublished decision); *see Brown v. Illinois,* 422 U.S. 590, 603–04 (1975); *Davis v. Commonwealth,* 37 Va. App. 421, 434, 559 S.E.2d 374, 380 (2002); *Walls,* 2 Va. App. at 653, 347 S.E.2d at 183.

Applying these factors to the case at bar, the Court concludes that Defendant's consent was not purged of the taint, i.e., the illegal entry. Although it could be argued that Defendant's consent to be searched was voluntary (Tr. at 63), however, the fact that consent was voluntary does not mean that it is "sufficiently an act of free will to purge the primary taint." *Walls v. Commonwealth,* 2 Va. App. at 654, 347 S.E.2d at 183 (quoting *Brown,* 422 U.S. at 602 (quoting *Wong Sun v. United States,* 371 U.S. 471, 486 (1963))). Further, there was not a sufficient passage of time between the illegal entry and the consent to purge the taint. *See Douglass,* 1997 Va. App. LEXIS 532, at *15–16 (unpublished decision) (citing *Brown,* 422 U.S. at 604– 05) (holding that the passage of up to an hour between the unlawful entry and the alleged consent was insufficient to dissipate a tainted consent). The evidence does not support the existence of any intervening circumstances. Finally, in considering the purpose and flagrancy of the police misconduct, the central issue is "whether there is a close causal connection between the official misconduct and the subsequent consent." *Walls,* 2 Va. App. at 655, 347 S.E.2d at 184 (quoting *State v. Taylor,* 468 So. 2d 617, 628 (La. App. 1985)). The Court does not consider Dickason's actions as flagrant or overly abusive nor is there evidence that Dickason actually forced his way into the break room. However, considering the totality of the evidence and the circumstances as to the location of Dickason when consent to search Defendant was obtained, that the consent itself is a fruit of the poisonous tree and that the consent was not purged of the taint and, therefore, seizure of the evidence was violative of the Fourth Amendment of the Constitution of the United States.

---

[1] Pursuant to *Fairfax County Sch. Bd. v. Rose,* 27 Va. App. 587, 594, n. 3 (1998), although an unpublished opinion of the Court of Appeals has no precedential value, a court does not commit error "by considering the rationale and adopting it to the extent it is persuasive."

The Motion to Suppress is sustained.